RICHARD H. GOLUBOW – State Bar No. 160434
rgolubow@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for Lorna Jane USA, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LORNA JANE USA, INC., a California corporation,<br><br>　　　　　Debtor and<br>　　　　　Debtor-in-Possession. | Case No. 2:21-bk-17267-NB<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**<br><br>**Confirmation Hearing:**<br><br>DATE:　　To be Determined<br>TIME:　　To be Determined<br>PLACE:　Courtroom 1545[1]<br>　　　　　255 E. Temple Street<br>　　　　　Los Angeles, CA 90012 |

---

[1] Hearings in Judge Bason's courtroom (1545) are now **simultaneously (1) IN PERSON in the courtroom, (2) via ZOOMGOV video, and (3) via ZOOMGOV telephone**. For instructions to appear via ZoomGov (either telephonically or by video), please see the tentative ruling for the first matter on calendar for the date of the hearing (i.e., page 1 of the posted tentative rulings). You do not need to call Chambers for advance approval. ZoomGov appearances are free for all participants. For more information see https://www.cacb.uscourts.gov/judges/honorable-neil-w-bason.

# **TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................................2

II. DEFINITIONS AND RULES OF INTERPRETATION.................................................3

    2.1    Definitions .................................................................................................3
    2.2    Rules of Construction .............................................................................15

III. FACTUAL BACKGROUND OF THE DEBTOR .........................................................15

    3.1    The Debtor's Business..............................................................................15
    3.2    Corporate Parent and Philosophy ............................................................15
    3.3    The Debtor's Operations ..........................................................................16
    3.4    The Debtor's Assets and Liabilities ........................................................18
    3.5    Recent Pre-Petition Sales ........................................................................19
    3.6    Employees ................................................................................................19
    3.7    Events Precipitating the Chapter 11 Filing..............................................20

IV. TREATMENT OF UNCLASSIFIED CLAIMS ............................................................22

    4.1    Allowed Administrative Claims ..............................................................23
    4.2    Allowed Priority Tax Claims ...................................................................26

V. CLASSIFICATION OF CLAIMS AND INTERESTS ..................................................27

VI. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ................................30

    6.1    Class 1.1 –Secured Tax Claims................................................................30
    6.2    Class 1.2 – Other Secured Claims.............................................................31
    6.3    Class 2.1 – Non-Tax Priority Claims. ......................................................31
    6.4    Class 3.1 - Convenience Claims...............................................................32
    6.5    Class 3.2 – General Unsecured Claims.....................................................33
    6.6    Class 3.3 – Subordinated Claims..............................................................34
    6.7    Class 4.1 - Interests..................................................................................35

VII. BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY ...............35

    7.1    Best Interest of Creditors Test..................................................................35
    7.2    Feasibility ................................................................................................37

VIII. ACCEPTANCE OR REJECTION OF THIS PLAN .................................................38

    8.1    Introduction .............................................................................................38
    8.2    Who May Object to Confirmation of this Plan. .......................................38
    8.3    Who May Vote to Accept/Reject this Plan.   ...........................................38
    8.4    What Is an Allowed Claim/Interest ..........................................................38
    8.5    What Is an Impaired Class.........................................................................38
    8.6    Who Is Not Entitled to Vote.....................................................................39
    8.7    Who Can Vote in More than One Class ....................................................39
    8.8    Votes Necessary for a Class to Accept this Plan .....................................39
    8.9    Treatment of Nonaccepting Class(es) ......................................................39
    8.10   Request for Confirmation Despite Nonacceptance by Impaired Class(es). ................40

IX. MEANS OF EXECUTION AND IMPLEMENTATION OF THIS PLAN ...............40

    9.1    Introduction .............................................................................................40
    9.2    Source of Funding Payments Due Under this Plan. .................................40
    9.3    Representative of the Estate. ....................................................................40

9.4     Causes of Action .................................................................................40
9.5     Compromise of Causes of Action ........................................................41
9.6     Collection of Causes of Action Recoveries .........................................41
9.7     Remedies Upon Default ......................................................................41

X. DISTRIBUTIONS ..............................................................................................41

10.1    Distribution Agent ..............................................................................41
10.2    Distributions. ......................................................................................42
10.3    Old Instruments and Securities. ..........................................................42
10.4    De Minimis Distributions and Fractional Shares ................................43
10.5    Delivery of Distribution(s) .................................................................43
10.6    Undeliverable Distribution(s) .............................................................43
10.7    Disposition of Unclaimed Property. ....................................................44

XI. OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS ................................44

11.1    Standing for Objections to Claims ......................................................44
11.2    Treatment of Disputed Claims and Disputed Liens. ............................44

XII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........................45

12.1    Executory Contracts Potentially Being Assumed. ...............................45
12.2    Executory Contracts Being Rejected ...................................................45
12.3    Bar Date for Rejection Damages .........................................................45
12.4    Changes in Rates Subject to Regulatory Commission Approval ..........45

XIII. LIMITATION OF LIABILITY ......................................................................46

13.1    No Liability for Solicitation or Participation ......................................46
13.2    Limitation of Liability .........................................................................46

XIV. CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THIS PLAN ...........46

14.1    Conditions Precedent to Plan Confirmation ........................................46
14.2    Conditions Precedent to Plan Effectiveness ........................................47
14.3    Waiver of Conditions ..........................................................................47

XV. RETENTION OF JURISDICTION ...................................................................47

XVI. MODIFICATION OR WITHDRAWAL OF PLAN ........................................49

16.1    Modification of Plan ...........................................................................49
16.2    Nonconsensual Confirmation ..............................................................49

XVII. MISCELLANEOUS ......................................................................................49

17.1    Payment of Statutory Fees...................................................................49
17.2    Discharge of Debtor and Injunction ....................................................50
17.3    Payment Dates .....................................................................................51
17.4    Headings ..............................................................................................51
17.5    Other Documents and Actions .............................................................52
17.6    Notices .................................................................................................52
17.7    Governing Law ....................................................................................52
17.8    Binding Effect .....................................................................................52
17.9    Successors and Assigns .......................................................................52
17.10   Severability of Plan Provisions ...........................................................52
17.11   No Waiver ...........................................................................................53
17.12   Exemption from Certain Transfer Taxes and Recording Fees ..............53

17.13  Post-Confirmation Status Report......................................................................53
17.14  Post-Confirmation Conversion/Dismissal.  .................................................54
17.15  Final Decree ........................................................................................................54

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. §101 ................................................................................................................. 6
11 U.S.C. §101(2) ............................................................................................................. 4
11 U.S.C. §101(5) ............................................................................................................. 7
11 U.S.C. §101(27) ........................................................................................................... 8
11 U.S.C. §102 ............................................................................................................... 15
11 U.S.C. §327 ............................................................................................................... 13
11 U.S.C. §328 ............................................................................................................... 13
11 U.S.C. §329 ............................................................................................................... 13
11 U.S.C. §330 .................................................................................................... 3, 10, 13
11 U.S.C. §331 ...................................................................................................... 3, 10
11 U.S.C. §346 ............................................................................................................... 48
11 U.S.C. §501 ............................................................................................................... 50
11 U.S.C. §502 ............................................................................................................... 50
11 U.S.C. §502(b)(9) ........................................................................................................ 8
11 U.S.C. §502(g) ..................................................................................................... 9, 50
11 U.S.C. §502(h) ..................................................................................................... 9, 50
11 U.S.C. §502(i) ...................................................................................................... 9, 50
11 U.S.C. §503 ...................................................................................................... 3, 10
11 U.S.C. §503(b) ............................................................................................. 3, 13, 23
11 U.S.C. §505 ............................................................................................................... 48
11 U.S.C. §506 ....................................................................................................... 6, 14
11 U.S.C. §506(b) ................................................................................................... 30, 31
11 U.S.C. §506(d) ........................................................................................................... 10
11 U.S.C. §507(a) ........................................................................................................... 12
11 U.S.C. §507(a)(1) ......................................................................................................... 3
11 U.S.C. §507(a)(2) ................................................................................................. 23, 39
11 U.S.C. §507(a)(3) ....................................................................................................... 39
11 U.S.C. §507(a)(4) ....................................................................................................... 28
11 U.S.C. §507(a)(5) ....................................................................................................... 28
11 U.S.C. §507(a)(6) ....................................................................................................... 28
11 U.S.C. §507(a)(7) ....................................................................................................... 28
11 U.S.C. §507(a)(8) ......................................................................................... 13, 26, 39
11 U.S.C. §507(b) ........................................................................................................... 23
11 U.S.C. §510 ................................................................................................................. 6
11 U.S.C. §510(c)(2) ....................................................................................................... 10
11 U.S.C. §511 ....................................................................................................... 30, 31
11 U.S.C. §521 ............................................................................................................... 14
11 U.S.C. §523(a) ........................................................................................................... 50
11 U.S.C. §524 ............................................................................................................... 51
11 U.S.C. §541 ................................................................................................................. 6
11 U.S.C. §544 ................................................................................................................. 6
11 U.S.C. §545 ................................................................................................................. 6
11 U.S.C. §547 ................................................................................................................. 6
11 U.S.C. §548 ................................................................................................................. 6
11 U.S.C. §549 ................................................................................................................. 6
11 U.S.C. §550 ................................................................................................................. 6

11 U.S.C. §551 ............................................................................................................. 6
11 U.S.C. § 1103 ........................................................................................................ 13
11 U.S.C. §1112(b) .................................................................................................... 54
11 U.S.C. §1122 ........................................................................................................... 9
11 U.S.C. § 1123 .......................................................................................................... 9
11 U.S.C. §1123(b)(3)(B) .......................................................................................... 40
11 U.S.C. §1124 .................................................................................................... 31, 33
11 U.S.C. §1126(f) .......................................................................................... 31, 33, 35
11 U.S.C. §1127 ......................................................................................................... 49
11 U.S.C. §1129(a)(7) ............................................................................................... 35
11 U.S.C. §1129(a)(8) .......................................................................................... 40, 49
11 U.S.C. §1129(a)(9) .......................................................................................... 32, 49
11 U.S.C. §1129(a)(11) .............................................................................................. 37
11 U.S.C. §1129(a)(12) .............................................................................................. 49
11 U.S.C. §1129(b) .............................................................................................. 40, 49
11 U.S.C. §1141 .................................................................................................... 50, 51
11 U.S.C. §1141(d)(1)(A) .......................................................................................... 50
11 U.S.C. §1141(d)(6) ................................................................................................ 50
11 U.S.C. §1142 ......................................................................................................... 47
11 U.S.C. § 1146 ................................................................................................... 48, 53
11 U.S.C. §1191(b) .................................................................................................... 50
11 U.S.C. §1192 ......................................................................................................... 50
28 U.S.C. §1334 ......................................................................................................... 47

**Other Authorities**

Section 157 of Title 28 of the United States Code ........................................................ 6
Section 1930 of Title 28 of the United States Code .................................................. 3, 49
Section 1930(a)(6) of Title 28 of the United States Code .......................................... 49

**Rules**

Bankruptcy Rule 1007 ............................................................................................... 14
Bankruptcy Rule 3002(c)(1) ........................................................................................ 8
Bankruptcy Rule 3022 ............................................................................................... 54
Bankruptcy Rule 4007(c) ........................................................................................... 50
Bankruptcy Rule 9006(a). ............................................................................................ 7

# I.

# **INTRODUCTION**

This Plan[2] is Filed by Lorna Jane USA, Inc., debtor and debtor-in-possession ("Debtor"), as the Plan Proponent in the Debtor's Chapter 11 Case.

This Plan provides for the orderly and structured reorganization of the Debtor. The Debtor shall make all payments due under this Plan from a combination of the Available Cash, the Projected Disposable Income from the operations of the Debtor's business, the other Assets, and the prosecution and liquidation of the Debtor's Avoidance Actions, if any.

This Plan provides for the classification and treatment of Creditors, and the terms of and amount of payment on account of all Allowed Claims.

This Plan provides for seven (7) Classes of Allowed Claims or Allowed Interests consisting of:  two (2) Classes of Allowed Secured Claims; one (1) Class of Allowed Non-Tax Priority Claims; three (3) Classes of Allowed Unsecured Claims consisting of one (1) Class of Allowed Convenience Claims, one (1) Class of Allowed General Unsecured Claims, and one (1) Class of Allowed Subordinated Claims; and, one (1) class of Allowed Interest Holders.  The Effective Date of this Plan is the first Business Day of the first month after entry of the Confirmation Order.

Creditors holding Allowed Secured Claims will receive Distributions, which the Debtor has valued at 100 cents on the dollar, and paid in full on the initial Distribution Date.  Creditors holding Allowed Non-Tax Priority Claims, if any, will receive Distributions, which the Debtor has valued at 100 cents on the dollar, and paid in full on the initial Distribution Date.  The Class of Allowed Convenience Claims will receive Distributions, which the Debtor has valued at 100 cents on the dollar, and paid in full on the initial Distribution Date. The Class of Allowed General Unsecured Claims will receive Distributions in the form of Projected Disposable Income, which the Debtor has valued at between 25.2% and 29.4% of the projected Allowed General Unsecured Claims, and paid semi-annually over a three (3) year period of time as

---

[2] All capitalized terms are defined terms set forth in Article II of this Plan.

1  described below.  The Class of Allowed Subordinated Claims will retain their Allowed Claims

2  but not receive any Distributions under this Plan until Holders of Allowed General Unsecured

3  Claims are paid their Pro Rata share of Projected Disposable Income under this Plan as described

4  below. The Class of Allowed Interest Holders will retain their Interests in the Debtor.

5  All Creditors and equity Interest Holders should refer to Articles IV and VI of this Plan

6  for information regarding the precise treatment of their Claim and Interest.

7  No solicitation materials, other than this Plan and related materials transmitted herewith

8  and approved for solicitation purposes by the Bankruptcy Court, have been authorized for use in

9  soliciting acceptances or rejections of this Plan.

10  **II.**

11  **DEFINITIONS AND RULES OF INTERPRETATION**

12  **2.1**    **Definitions.**  The following defined terms are used in this Plan.  Any capitalized

13  term that is not defined herein or elsewhere in this Plan, but is defined in the Bankruptcy Code or

14  the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or

15  Bankruptcy Rules.

16  2.1.1    Administrative Claim(s).  Any Claim incurred after the Petition Date but

17  before the Confirmation Date for any cost or expense of administration of the Case

18  allowable under Section 330, 331, 503(b), or 507(a)(1) of the Bankruptcy Code,

19  including, without limitation, any actual and necessary post-petition expenses of

20  preserving the Estate of the Debtor, any actual and necessary post-petition expenses of

21  operating the business of the Debtor, all compensation or reimbursement of expenses to

22  the extent allowed by the Bankruptcy Court under Section 330, 331, or 503 of the

23  Bankruptcy Code and any fees or charges assessed against the Estate of the Debtor under

24  Section 1930 of title 28 of the United States Code.

25  2.1.2    Administrative Claims Bar Date.  The last date fixed by this Plan for the

26  filing of requests for payment of Administrative Claims shall be in the form of a motion

27  or application Filed with notice thereof provided in accordance with the Bankruptcy

28  Rules.  The filing of a Proof of Claim alone asserting or requesting payment of an

Administrative Claim shall be insufficient and deemed impermissible, invalid, void, unenforceable and of no force or effect.  Under this Plan, the Administrative Claims Bar Date shall be the first Business Day after the sixtieth (60th) day after the Confirmation Date.

2.1.3   Affiliate(s).  The term shall have the meaning set forth under Section 101(2) of the Bankruptcy Code, including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person.  The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

2.1.4   Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

2.1.5   Allowed Amount shall mean:

(i)      With respect to any Administrative Claim (a) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (b) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Debtor and is not otherwise subject to an Administrative Claims Bar Date, the amount of such Claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (c) if the Holder of such Claim was required to File and has Filed proof thereof as part of a noticed motion or application with the Bankruptcy Court on or before an Administrative Claims Bar Date, (1) the amount stated in such proof if no objection to such noticed motion or application is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or

the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an Administrative Claims Bar Date and not Filed by the applicable Administrative Claims Bar Date shall be zero, and no Distribution shall be made on account of any such Administrative Claim;

(ii)    With respect to any Claim which is not an Administrative Claim ("Other Claim"):  (a) if the Holder of such Other Claim did not File proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Debtor's Schedules as neither disputed, contingent or unliquidated; or (b) if the Holder of such Claim has Filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (i) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court, or (ii) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court.  The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Debtor's Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of this Plan shall be zero, and no Distribution shall be made on account of any such Claim; and

(iii)    With respect to any Interest, (a) the amount provided by or established in the records of the Debtor at the Confirmation Date, provided, however, that a timely Filed proof of Interest shall supersede any listing of such Interest on the records of the Debtor; or (b) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was

Filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (c) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.6   Allowed Claim(s).  Except as otherwise provided in this Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by this Plan), a Claim to the extent of the Allowed Amount of such Claim.

2.1.7   Allowed Interest(s).  Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.8   Assets.  All assets that are property of the Debtor pursuant to Section 541 of the Bankruptcy Code.

2.1.9   Available Cash.  The Cash deposited into the Distribution Account(s) on or after the Effective Date that is available for the Debtor to make Distributions under this Plan to Holders of Allowed Claims.

2.1.10  Avoidance Actions.  All Claims and defenses to Claims accruing to the Debtor and its Estate under Bankruptcy Code Sections 506, 510, 541, 544, 545, 547, 548, 549, 550, or 551.

2.1.11  Avoidance Actions Recoveries.  Any Cash or other property received by the Debtor from all or any portion of an Avoidance Action(s), including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise.

2.1.12  Bankruptcy Code.  Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended. All citations in this Plan to section numbers are to the Bankruptcy Code, unless otherwise expressly stated herein.

2.1.13  Bankruptcy Court.  The United States Bankruptcy Court for the Central District of California, Los Angeles Division, having jurisdiction over the Case and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California;

or, in the event such courts cease to exercise jurisdiction over the Case, such court or unit thereof that exercises jurisdiction over the Case in lieu thereof.

2.1.14  Bankruptcy Rule(s).  Collectively, as now in effect or hereafter amended and as applicable to the Case, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.15  Business Day.  Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

2.1.16  Case.  The Chapter 11 case of the Debtor pending before the Bankruptcy Court.

2.1.17  Cash.  Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

2.1.18  Cause(s) of Action.  Any and all claims, demands, counterclaims, setoff rights, recoupment rights, defenses, interests, rights, actions, causes of action and suits of the Debtor or the Estate, of any kind or character whatsoever, arising prior to the Effective Date, in contract or in tort, at law or in equity or under any other theory of law, that the Debtor or the Debtor's Estate has or asserts, or may have or assert, against third parties, whether or not the subject of litigation or otherwise asserted as of the Effective Date, and which have not been settled or otherwise resolved by Final Order as of the Effective Date, including but not limited to: (a) Avoidance Actions; (b) claims for refunds, rebates or returns of deposits of any nature, including, without limitation, any Tax or insurance refunds; (c) claims to recover accounts receivable or other payables; and (d) any other claims, rights, interests or demands which may be asserted against persons or entities.

2.1.19  Claim(s).  This term shall have the broadest possible meaning under Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated,

fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.20  <u>Claims Bar Date</u>.  For any Claim other than an Administrative Claim, November 26, 2021, established by the Bankruptcy Court as the last date for Creditors to File Proofs of Claim with the Bankruptcy Court in the Debtor's Case.  The exceptions to this Claims Bar Date are: (1) Claims arising from the rejection of executory contracts or unexpired leases; (2) Claims of "governmental units," as such term is defined in Section 101(27) of the Bankruptcy Code; (3) Claims arising as the result of transfer avoidance pursuant to Chapter 5 of the Bankruptcy Code; and (4) entry of a Final Order extending the Claims Bar Date for one or more alleged Creditor(s).  For Claims arising from rejection of any executory contract or unexpired lease, the last day to File a Proof of Claim is the later to occur of (a) November 26, 2021, (b) thirty (30) days after the date of entry of an order authorizing the rejection of such contract or lease or after any automatic rejection of such contract or lease, or (c) thirty (30) days after service of a bar date notice upon the Creditor asserting such Claim.  For Claims of "governmental units," as that term is defined in 11 U.S.C. §101(27), Proofs of Claim are timely Filed if Filed: (a) before one-hundred eighty (180) days after the Petition Date, or as otherwise provided in Rule 3002(c)(1) of the Bankruptcy Rules. *See* 11 U.S.C. §502(b)(9).  The Bankruptcy Court set March 15, 2022 as the last day for governmental units to File a Proof of Claim.  For Claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to File a Proof of Claim is the later of (a) the Claims Bar Date or (b) thirty (30) days after the entry of judgment avoiding the transfer.

2.1.21  <u>Claims Objection Deadline</u>.  The later of (i) the first Business Day following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such

greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Debtor and the Holder of the Claim.

2.1.22  Class(es).  Each group of Claims or Interests classified in this Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

2.1.23  Confirmation Date.  The date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

2.1.24  Confirmation Order.  The Final Order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

2.1.25  Convenience Claim(s).  Any Claim against the Debtor that would otherwise be a General Unsecured Claim but for the fact that the Claim is Allowed in an amount that is greater than $0 and less than or equal to $10,000.00 or for which the Creditor elects (pursuant to the appropriate election on a Plan ballot or other written instrument submitted and satisfactory to the Plan Proponent) to reduce the Allowed amount of its Claim to $10,000.00; provided, however, that a Claim may not be sub-divided into multiple Claims of $10,000.00 or less for purposes of receiving treatment as a Convenience Claim.

2.1.26  Creditor(s).  Any Person who is the Holder of a Claim against the Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.27  Debtor.  Lorna Jane USA, Inc., a California corporation.

2.1.28  Disputed Claim(s).  All or any part of a Claim other than any Allowed Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been Filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the Claim is subject (a) to an Avoidance Action; (b) to offset by an Avoidance Action; (c) to a timely objection that has not been

resolved by a Final Order; or (d) to a request for estimation in accordance with the

Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court,

or this Plan which is Filed on or before the Claims Objection Deadline, which adversary

proceeding, objection, or request for estimation has not been dismissed, withdrawn or

determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim"

pursuant to this Plan.

     2.1.29  <u>Disputed Lien(s)</u>.  An asserted lien(s) against Assets of the Debtor that is

either subject to a Disputed Claim, not duly perfected, subject to an Avoidance Action, or

subject to an action pursuant to Sections 510(c)(2) and/or 506(d) of the Bankruptcy Code.

     2.1.30  <u>Distribution(s)</u>.  Payments of Cash and any other property sold,

transferred, returned or otherwise distributed as provided for under this Plan.

     2.1.31  <u>Distribution Account(s)</u>.  One or more segregated accounts established by

the Debtor at a financial institution that is an authorized depository on the U.S. Trustee

list of approved depositories, and from which the Debtor will make all Distributions.

     2.1.32  <u>Distribution Agent</u>.  The Person that is responsible for making

Distributions under this Plan, which shall be the Debtor.

     2.1.33  <u>Distribution Date</u>.  With respect to any Allowed Claim or Allowed

Interest, the date on which a Distribution is required to be made under this Plan.

     2.1.34  <u>Effective Date</u>.  The first Business Day of the first month after entry of the

Final Order confirming this Plan.

     2.1.35  <u>Estate</u>.  The bankruptcy estate of the Debtor created pursuant to

Section 541 of the Bankruptcy Code.

     2.1.36  <u>Fee Application(s)</u>.  Applications of Professional Persons under

Sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and

reimbursement of expenses in the Case.

     2.1.37  <u>File(d)</u>.  Delivered to, received by and entered upon the legal docket by

the Clerk of the Bankruptcy Court.

2.1.38  Final Order.  An order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or to obtain a rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or obtain a rehearing shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or proceeding for reargument or rehearing of such order or judgment has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

2.1.39  General Unsecured Claim(s).  A Claim against the Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim, or (d) a Non-Tax Priority Claim.

2.1.40  Holder.  The beneficial owner of any Claim or Interest.

2.1.41  Intercompany Claim(s).  Any Net Intercompany Claim(s) against the Debtor held by LJ USA Holdings, Inc., Lorna Jane Pty Ltd., Lorna Jane BV-Europe, Lorna Jane Hong Kong Ltd., Move Nourish Believe, and Run Girl Run, or an Affiliate of the Debtor.

2.1.42  Interest(s).  Any equity security interest in the Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in the Debtor, whether in the form of common or preferred stock, stock options, warrants, partnership interests, or membership interests.

2.1.43  Lien.  Any lien, encumbrance, pledge or other charge against property.

2.1.44  <u>Net Intercompany Claim(s)</u>.  The balance owed to the Holder of an Intercompany Claim after deducting all Claims that the Debtor has against the Holder of such Intercompany Claim.

2.1.45  <u>Net Sales Proceeds</u>.  The Cash generated from the sale(s), liquidation or transfer of the Assets, less payment of selling expenses, closing costs, taxes, and any associated Post-Confirmation Expenses and Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

2.1.46  <u>Non-Tax Priority Claim(s)</u>.  Any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.47  <u>Other Secured Claim(s)</u>.  Any Secured Claim that is not a Secured Tax Claim.

2.1.48  <u>Person(s)</u>.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.49  <u>Petition Date</u>.  September 16, 2021.

2.1.50  <u>Plan</u>.  This Chapter 11 Plan, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time-to-time.

2.1.51  <u>Plan Financial Projections</u>.  The financial projections prepared by the management of the Debtor, attached hereto as Exhibit "6."

2.1.52  <u>Plan Proponent</u>.  The Debtor, which is the party-in-interest that is proposing this Plan.

2.1.53  <u>Post-Confirmation Expense(s)</u>.  All voluntary and involuntary costs, expenses, fees, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured, non-contingent, contingent, liquidated, or unliquidated incurred by the Debtor or the Trustee, related to performance of the Debtor's duties under this Plan, including,

but not limited to the following: (a) fees and expenses incurred by the Debtor and its professionals following the Confirmation Date for the purpose of (i) prosecuting and liquidating the Avoidance Actions; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Assets; (iv) effectuating Distributions under this Plan; and (v) otherwise consummating this Plan and closing the Debtor's Chapter 11 Case.

2.1.54  Priority Tax Claim(s).  Any Claim for any Tax to the extent that it is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.1.55  Pro Rata.  Proportionately, so that with respect to any Distribution with respect to any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.56  Professional.  A Person or Entity (a) employed by the Debtor pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

2.1.57  Professional Fees.  All Allowed Claims for compensation and for reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code.

2.1.58  Projected Disposable Income.  The income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor as set forth in the Plan Financial Projections.

2.1.59  Schedules.  The schedules of assets and liabilities and list of equity security holders Filed by the Debtor, as required by Section 521 of the Bankruptcy Code, and Bankruptcy Rule 1007, as may be amended or supplemented from time-to-time.

2.1.60  Secured Claim(s).  Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and unavoidable Lien on the Debtor's Assets.

2.1.61  Secured Tax Claim(s).  Any Secured Claim for any Tax.

2.1.62  Subordinated Claim(s).  Any and all Intercreditor Claims, which Claims shall be subordinated to Allowed General Unsecured Claims whether under this Plan, by operation of law or pursuant to a Final Order, including the Confirmation Order.

2.1.63  Tax.  Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, or imposed on or with respect to such assessments.

2.1.64  Trustee.  The Subchapter V trustee appointed by the U.S. Trustee for the Debtor's case.

2.1.65  U.S. Bank.  U.S. Bank National Association.

2.1.66  U.S. Bank Loan Documents.  All documents executed by the Debtor in connection with the U.S. Bank Note, under the Paycheck Protection Program administered by the U.S. Small Business Administration in accordance with the Coronavirus Aid, Relief, and Economic Security Act, as more particularly described in and attached to U.S. Bank's Proof of Claim, filed on November 20, 2021 as Claim No. 20, as such documents may have been amended or modified from time-to-time.

2.1.67  U.S. Bank Note.  That certain note for the original principal amount of $1,188,265.00 dated May 12, 2021, between U.S. Bank, as lender, and the Debtor, as borrower, and all extensions, amendments and modifications thereto.

2.1.68  <u>U.S. Trustee</u>.  The United States Trustee for Region 16.

**2.2**    **Rules of Construction**.  For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) except as otherwise indicated herein all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "therein," "thereunder" and "thereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; and (g) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; and (h) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of this Plan or any other provision in this Section.

## III.

## FACTUAL BACKGROUND OF THE DEBTOR

**3.1**    **The Debtor's Business**.  The Debtor is a retailer in the United States of a wide range of high-quality affordable women's athletic apparel and accessories for active living including collections offered for yoga, running, gym and cross-training, tennis, travel, maternity, lifestyle and work from home. Through its website, and until recently through its boutiques, the Debtor sells Lorna Jane branded product that is designed in Australia and manufactured in China.

**3.2**    **Corporate Parent and Philosophy**.  The Debtor is the wholly-owned subsidiary of LJ USA General Partnership ("<u>Partnership</u>").  Partnership is owned equally by LG GP No. 1

Pty, and Ltd LG GP No. 2 Pty Ltd, both organized under the laws of Australia, that are each

wholly owned by Lorna Jane PTY Ltd ("International"), which is also organized under the laws

of Australia, and headquartered in Brisbane, Queensland, Australia.

The Lorna Jane brand was originally founded in 1989 in Brisbane, Australia by Lorna

Jane Clarkson.  Ms. Clarkson was an aerobics instructor in Brisbane, Australia.  Frustrated with

the boring and unflattering workout fashion of the 1980s, she started designing "Activewear", a

term she coined, to reflect her passion to inspire women to be more active.  So, she took a pair of

scissors to her favorite swimsuit to discover how it was made, and the first ever piece of Lorna

Jane Activewear began to take shape.  Ms. Clarkson's aerobics students took notice of her

designs and started asking for custom orders. Soon, overwhelming demand led to opening the

first Lorna Jane store in 1993 in Brisbane, Australia.

Under stewardship of Ms. Clarkson, and her husband William "Bill" Clarkson, by 2011

the 100th Australian based Lorna Jane store was opened.  In 2012, Lorna Jane went global by

opening its first United States based store, with a strategy of internationalization through opening

stores and showrooms throughout the globe that shared and helped promote the award-winning

Lorna Jane brand, and Lorna Jane's daily practice of the Active Living™ philosophy that it

stands by - Move, Nourish, Believe.  Move your body every day.  Nourish from the inside out.

Believe that anything is possible.

In combination with and through its affiliates, International has boutiques and showrooms

in Australia, New Zealand, North America, Europe, and Asia, and also sells products through its

affiliates' web platforms.

At the heart of Lorna Jane is a commitment to sustainability. Lorna Jane respects both

humankind and the environment. Importantly, Lorna Jane is driven to ensure that its

communities, planet and environment are just as healthy as the women that wear its Activewear.

Neither Partnership, International, nor any affiliates, have commenced chapter 11 or

insolvency proceedings.

**3.3**    **The Debtor's Operations.**  The Debtor was formed and incorporated in the state

of California on or about September 30, 2011 as a means to promote and expand the

internationally renowned Lorna Jane products brand in the United States.  Market research revealed that the success of International could be emulated in the United States based on the unique product range, coupled with the more than 20-year history and Australian heritage of the Lorna Jane brand.  The strategy hinged upon opening retail stores in strategic locations in California and expand north and east as time progressed.  The initial research through fitness trade shows and product marketing to established institutional landlords yielded promising feedback in both brand resonance as well as future growth potential.

With growing demand for yoga and fitness apparel, Lorna Jane Activewear was the ideal product to introduce to the United States market as a viable alternative to established brands such as Lululemon.  California was selected as the initial entry point based on the similarity of weather/climate to Brisbane, Australia, and hence the product relevance, the engaged clientele and the size of the target market.

In 2012 the Debtor opened its first boutique in the United States in Santa Monica, California.  Until recently, the Debtor operated twenty-two (22) retail boutiques in five (5) states (California, Texas, Arizona, Utah, and Washington) and at which the Debtor sold Lorna Jane branded women's activewear and accessories. The boutiques were located in regional malls, several street-front locations, and outlet centers.  The Debtor also sells products directly to customers through its website, https://www.lornajane.com/. As of the fiscal year that ended on July 4, 2021, the Debtor comprised 7.69% of International's consolidated sales.

The Lorna Jane branded products are sold by the Debtor under license owned by International, which works directly with a reliable and ethical manufacturing group that manufactures Lorna Jane products sourced in China. The sourcing of the Lorna Jane brand products is important to ensure that the products used are of the highest quality, and sourced as sustainably as possible.

The Debtor maintains its headquarters and a primary distribution center at 1475 W. 139th Street, Gardena, CA 90249 ("Distribution Center"), from where it ships its products directly to customers, and formerly to its retail boutiques.

1    The Debtor's officers are comprised of Mr. Clarkson, the Chief Executive Officer, Kush

2    de Alwis, the Chief Financial Officer, and Richard Munro, the Debtor's Chief Restructuring

3    Officer.

4        **3.4    The Debtor's Assets and Liabilities.**  As of the Petition Date, the Debtor's

5    balance sheet reflects approximately $5,084,663 in assets and approximately $5,105,189 in

6    liabilities, excluding debts owed to insiders or Affiliates.  The Debtor does not own any real

7    estate.  Its Assets primarily include Cash, Lorna Jane branded inventory, with nominal value

8    attributed to information systems and computer technology equipment, and transit/delivery

9    vehicles.

10    The Debtor's Assets are not encumbered by or otherwise subject to any Liens except as

11    may be asserted by Holders of Secured Tax Claims that the Debtor estimates in the aggregate

12    approximate amount of $13,919.97.  See, Article V, below.  Other than the sales revenue it

13    generates, the Debtor's chief financing source has historically been International, and a sister-

14    company LJ USA Holdings, Inc., a California corporation ("Holdings"), which is a wholly

15    owned subsidiary of Partnership.  International and Holdings have provided capital assistance to

16    the Debtor over the years in the form of periodic unsecured loans intended to assist the Debtor

17    fund operating shortfalls.   This arrangement has provided funding to the Debtor so that the

18    Debtor may promote and sell the Lorna Jane brand in the United States without the Debtor

19    having to leverage its Assets. As of the Petition Date, Holdings and International are by far the

20    Debtor's largest unsecured creditors, as they are owed approximately $32,292,117, and

21    $9,878,693, respectively, for monies loaned.

22    As of the Petition Date, the Debtor leased all of its retail boutique locations, as well as its

23    Distribution Center under operating leases that expire on various dates, with the longest lease

24    term expiring in 2029.  Outside of Holding's and International's claims, the Debtor's largest

25    liability is to its landlords.

26    As of the Petition Date, the aggregate amount of annual and monthly gross rent due to

27    landlords on all leases was approximately $4,382,000 and $365,263, respectively.  As of August

28    31, 2021, the Debtor's total remaining lease obligations under the terms of its then current leases

was approximately $14,913,000.  As of the Petition Date, the Debtor was approximately

$2,100,697 in arrears on its leases.  The Debtor believes that as of the Petition Date, landlords

were holding approximately $249,585 in security deposits.

**3.5**    **Recent Pre-Petition Sales.**  For the Debtor's fiscal year beginning on July 5,

2021, through August 29, 2021, the Debtor's net sales were approximately $1,503,000, down

nearly 47% from approximately $2,855,000 in net sales for the same period in FY2020.

Although the Debtor was experiencing a shift to e-commerce sales prior to the COVID-

19 pandemic, the trend greatly accelerated during the pandemic due to emergency government

orders closing or limiting retail store operations for prolonged periods and general consumer

reluctance to shop in person. In 2019, brick-and-mortar retail sales comprised 69% of the

Debtor's overall sales. However, for 2020, a time nearly entirely encompassing the pandemic,

brick-and-mortar retail sales declined by 56% and comprised just 49% of the Debtor's total sales.

Meanwhile, in 2020, the Debtor's e-commerce sales have dramatically increased by 62%, and

have gone from comprising 18% of the Debtor's overall sales (in 2019) to 47%.

Additionally, almost all of the Debtor's products and inventory are imported and

processed through the Distribution Center. The amount of imported products that the Debtor

accounted for during the COVID-19 pandemic, in both value and quantity, declined sharply.

Specifically, in 2019 the Debtor accounted for 441,610 in quantity and $7,321,812 in value. In

2020, the Debtor declared 198,622 in quantity and $3,290,058 in value in its accounts.  Whereas

through August 31, 2021, the Debtor declared 144,500 in quantity and $2,591,683 in value.  This

further evidenced the significant impact that the pandemic has had on the Debtor's sales and

therefore the drastic reduction in inventory purchases year-on-year.

**3.6**    **Employees.**  The Debtor's employees have been central to its success.  However,

due to the decision to reject retail leases (described in greater detail below), the natural

consequence was the need to terminate nearly all employees except those that work at the

Distribution Center.  The Debtor has ten (10) full-time employees, nine (9) of which operate

from the Debtor's Distribution Center, and one (1) of which operates from Utah. The employees

1    serve to support the Debtor's operations at the Distribution Center, and its online shopping

2    platform.

3        **3.7    <u>Events Precipitating the Chapter 11 Filing</u>.**  As has been the case with brick-

4    and-mortar retailers across the United States and the rest of the world, the unprecedented

5    COVID-19 pandemic has substantially and negatively affected the Debtor's business and has

6    greatly accelerated the need for a long-term strategic solution.  In particular, due to state and

7    local emergency orders issued during the pandemic, the vast majority of the Debtor's retail

8    boutiques were either operating with reduced hours or capacity, or were closed entirely for

9    extended periods. Due to the pandemic and the resulting government restrictions, the Debtor

10    made the business decision to close all of its stores in mid-March 2020.  Between June 2020 and

11    September 2020, most of the Debtor's retail boutiques gradually re-opened depending on the

12    status of local restrictions and conditions.  When locations were re-opened, virtually all were

13    operating with reduced hours and capacity limitations based on local restrictions and conditions.

14    Consequently, retail sales from the brick-and-mortar locations precipitously declined by 55%

15    over the 12 months ending June 30, 2021, in comparison to the same period in 2019. Sales

16    during June to August 29, 2021, declined 55% when compared to the same time in 2019.

17        The pandemic also understandably suppressed consumer willingness to shop in person,

18    particularly in indoor malls where the bulk of the Debtor's retail boutiques are located and social

19    distancing is difficult.  Consequently, consumer habits have changed and there has been a

20    decided accelerating shift away from in-person retail shopping in favor of online purchasing that

21    is predicted to endure even after the pandemic subsides.  As noted above, the Debtor's e-

22    commerce sales have risen by 69% compared to pre-pandemic levels and now comprise 47% of

23    the Debtor's overall net sales, while brick-and-mortar retail sales have fallen from nearly 56% of

24    the Debtor's total net sales to just 49%.

25        The world has been forever changed by the pandemic. The Debtor was saddled with hefty

26    lease obligations that were entered into under circumstances completely different from where we

27    are today, under which the societal altering impact of the pandemic was never anticipated.  Even

28    so, the Debtor was experiencing a decline in brick-and-mortar retail sales prior to the pandemic

that was becoming increasingly untenable, leading to the Debtor's efforts to adjust its brick-and-mortar presence.  The pandemic expedited this issue, further highlighting that the lease obligations became an albatross around the Debtor's neck.

In the face of the mounting financial difficulties of the pandemic, the Debtor's management instituted various mitigation measures, including implementing recurring reviews of its workforce needs which led to reducing workforce (including at the corporate office level) either permanently in some cases or through furloughs, consolidating roles, reducing marketing expenses, and halting capital expenditure projects.  Unfortunately, the impact of the pandemic had proven too steep and enduring despite these initiatives, and it became clear that more holistic efforts centered on the Debtor's lease obligations were needed to preserve the Debtor long-term. The Debtor simply was not generating enough revenue from brick-and-mortar sales to meet its lease obligations.  As noted, consumer purchasing habits have changed as a result of the pandemic, and it may be years before brick-and-mortar retail sales return to pre-pandemic levels, if ever.  In the meantime, the Debtor's lease obligations, which unfortunately no longer accurately reflect the market, became an increasingly heavy anchor for the Debtor and ultimately threatened the Debtor's viability. Relief in Chapter 11, and in particular, the rejection of burdensome leases, was necessary to enable the Debtor to adapt to the new economic realities with the goal of bolstering the Debtor's long-term viability and preserving the Debtor's United States market presence.

Against this backdrop, in the months prior to filing the Chapter 11 Case, the Debtor and its advisors worked tirelessly to solicit and develop strategies to maximize value for its stakeholders.  Most pertinently, the Debtor negotiated diligently with its landlords to reach terms that would have resulted in an out-of-court restructuring.  In particular, the Debtor undertook the significant effort to renegotiate leases and obtain rent concessions from the Debtor's landlords. Unfortunately, the Debtor was unable to execute a satisfactory out-of-court restructuring as landlords generally exhibited reluctance to negotiate long-term adjustments to leases. As of the Petition Date, seven (7) landlords commenced actions for amounts due under leases, and others issued demand letters.

1    The Debtor did not pay any rent obligations in September 2021, and also did not remit

2  rent on certain other leases in prior months. However, the Debtor generally paid its vendors,

3  suppliers, service providers, and trade creditors in the ordinary course of its business.

4    After much deliberation and consultation with its professionals and advisors, the Debtor

5  determined in its business judgment that restructuring through chapter 11 presents the best

6  avenue for the Debtor to address its challenges and promote sustained success.  In particular,

7  through this Chapter 11 Case, the Debtor determined that it was in the best interest of the Estate

8  to eliminate its brick-and-mortar footprint through the rejection of burdensome leases in order to

9  restructure and strengthen its financial picture for its go-forward business, including preserving

10  its employees that operate from the Distribution Center. To this end, the Debtor's management

11  team and advisors determined at the outset of the Debtor's Chapter 11 Case that it was

12  appropriate to close and reject the leases for all twenty-one (21) retail locations.  In formulating

13  this list of store closings, the Debtor considered such factors as the location's historic sales in

14  relation to the remaining lease obligations, recent sale trends, the geographic market in which the

15  store is located, the prospects to negotiate rent reduction with the applicable landlords, and other

16  circumstances related to a specific retail boutique's performance.

17    Although difficult, it is believed that closing boutique retail locations and rejecting leases

18  was necessary especially in light of the new realities brought on by the pandemic, and will help

19  maximize recovery for creditors over time.  The Debtor determined it was prudent to act now in

20  order to minimize liabilities from mounting lease obligations that the Debtor cannot fulfill now

21  or in the near-term, and put the Debtor in the best position for long-term success for its various

22  stakeholders through an appropriate right-sizing of the Debtor's business.

23                                    **IV.**

24                    **<u>TREATMENT OF UNCLASSIFIED CLAIMS</u>**

25    As required by the Bankruptcy Code, this Plan places Claims and Interests into various

26  Classes according to their right to priority.  However, certain types of Claims are not classified in

27  any Classes under this Plan.  These Claims are deemed "unclassified" under the provisions of the

28  Bankruptcy Code.  They are not considered impaired and they do not vote on this Plan, because

1    they are automatically entitled to the specific treatment provided for them in the Bankruptcy

2    Code.  The treatment of these unclassified Claims is as provided below.

3    **4.1    Allowed Administrative Claims.**  Administrative Claims are Claims allowed

4    under Bankruptcy Code Section 503(b).  The Bankruptcy Code requires that all Allowed

5    Administrative Claims be paid on the Effective Date of this Plan, unless a particular Holder

6    agrees to a different treatment.  The treatment of Allowed Administrative Claims is as described

7    below.

8    (a)    Payment.  All Allowed Administrative Claims will be paid by the

9    Distribution Agent from the Available Cash.  Except to the extent that the Holder of an

10    Allowed Administrative Claim agrees to a different treatment and subject to the

11    Administrative Claims Bar Date set forth herein, the Distribution Agent shall pay each

12    Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, or as

13    soon as practical thereafter, (ii) within ten (10) Business Days after the date such

14    Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such

15    Allowed Administrative Claim becomes due according to its terms.  Notwithstanding the

16    foregoing, any Allowed Administrative Claim representing obligations incurred in the

17    ordinary course of post-petition business by the Debtor (including without limitation

18    post-petition trade obligations) shall be paid in full or performed by the Debtor in the

19    ordinary course of business, in accordance with the terms of the particular obligation.

20    (b)    Administrative Claims Bar Date.

21    (i)    Administrative Claims Bar Date.  All applications for final

22    compensation of Professionals for services rendered and for reimbursement of

23    expenses incurred on or before the Effective Date and all other requests for

24    payment of Administrative Claims incurred before the Effective Date under

25    Sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-

26    petition, ordinary course trade obligations incurred in the ordinary course of the

27    Debtor's post-petition business, for which no bar date shall apply, and (ii) post-

28    petition tax obligations, for which the bar date described in the following Section

shall apply) shall be Filed with the Bankruptcy Court and served upon the Debtor

no later than the Administrative Claims Bar Date, unless such date is extended by

the Bankruptcy Court after notice to the Debtor.  Any such request for payment of

an Administrative Claim that is subject to the Administrative Claims Bar Date and

that is not Filed and served on or before the Administrative Claims Bar Date in

compliance with Section 2.1.2 of this Plan, shall be forever barred; any party that

seeks payment of Administrative Claims that (i) is required to File a request for

payment of such Administrative Claims and (ii) does not File such a request by

the deadline established herein shall be forever barred from asserting such

Administrative Claims against the Debtor, its Estate, or any of its respective

property.

(ii)    Administrative Tax Claims Bar Date.  All requests for payment of

Administrative Claims by a governmental unit for Taxes (and for interest and/or

penalties related to such Taxes) for any tax year or period, all or any portion of

which occurs or falls within the period from and including the Petition Date

through and including the Effective Date ("Tax Administrative Claims") and for

which no bar date has otherwise previously been established, must be Filed and

served on the Debtor on or before the later of (i) sixty (60) days following the

Effective Date; and (ii) one hundred and eighty (180) days following the filing of

the tax return for such taxes for such tax year or period with the applicable

governmental unit.  Any Holder of any Tax Administrative Claims that is required

to File a request for payment of such taxes and does not File and properly serve

such a request by the applicable bar date shall be forever barred from asserting

any such Tax Administrative Claims against the Debtor.

(c)    Summary of Estimated Allowed Administrative Expenses.  Administrative

expenses in the form of Professional Fees may be due and owing to: (i)   Winthrop

Golubow Hollander, LLP ("WGH"), employed as insolvency counsel to the Debtor; (ii)

FSG Lawyers ("FSG"), employed as special litigation counsel to the Debtor; and (iii)
Susan K. Seflin, Esq., the Trustee.

The balance of the pre-petition retainer paid by the Debtor to WGH was
approximately $204,849.36 ("WGH Retainer") as of the Petition Date. From the Petition
Date through November 30, 2021, the Debtor has incurred administrative expenses in the
form of legal fees and expenses in the approximate amount of $132,000.00 payable to
WGH. Pursuant to Bankruptcy Court order, WGH has been able to draw down upon
80% of fees incurred and 100% of costs advanced. WGH estimates that the outstanding
amount that the Debtor will owe to WGH as of the Effective Date will be approximately
$100,000.00, after crediting the WGH Retainer against all amounts owed and approved
by the Bankruptcy Court to be paid to WGH.

The balance of the pre-petition retainer paid by the Debtor to FSG was
approximately $47,810.89 ("FSG Retainer") as of the Petition Date. From the Petition
Date through November 30, 2021, the Debtor has incurred administrative expenses in the
form of legal fees and expenses in the approximate amount of $10,000.00 payable to
FSG. Pursuant to Bankruptcy Court order, FSG has been able to draw down upon 80%
of fees incurred and 100% of costs advanced. FSG estimates that the outstanding amount
that the Debtor will owe to FSG as of the Effective Date will be approximately $0.00,
after crediting the FSG Retainer against all amounts owed and approved by the
Bankruptcy Court to be paid to FSG.

From the Petition Date through November 30, 2021, the Debtor has incurred
administrative expenses in the form of fees and expenses incurred by the Trustee in the
approximate amount of $7,800.00. The Trustee estimates that her total fees and expenses
owed and approved by the Bankruptcy Court as of the Effective Date will be
approximately $20,000.00.

(d)     Payment of Post-Effective Date Professional Fees and Expenses. Except
as otherwise provided in this Plan or ordered by the Bankruptcy Court, on and after the
Effective Date, the Debtor shall, in the ordinary course of business without any further

notice or action, order or approval of the Bankruptcy Court, pay with Available Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of this Plan incurred by Professionals retained by the Debtor, and incurred by the Trustee.  Upon the Effective Date, the requirement that Professionals comply with Sections 327 through 331, 363 and 1103 of the Bankruptcy Code after such date shall terminate, and the Debtor may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**4.2    Allowed Priority Tax Claims.**  Priority Tax Claims are certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. The Bankruptcy Code requires that each holder of such a Section 507(a)(8) Priority Tax Claim receive the present value of such Claim in deferred cash payments, over a period not exceeding five (5) years from the Petition Date and that such treatment not be less favorable than the treatment accorded to nonpriority unsecured creditors.

Except to the extent that a Holder of an Allowed Priority Tax Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Priority Tax Claim, at the election of the Debtor, the Holder of each Allowed Priority Tax Claim shall be entitled to receive, on account of such Claim, (i) equal Cash payments on the last Business Day of each one-year period following the Effective Date, during a period not to exceed five (5) years after September 16, 2021 but in no event later than the date Distributions are paid to Holders of Class 3.2 General Unsecured Claims, totaling the principal amount of such Claim plus simple interest on any unpaid balance from the Effective Date, calculated at the interest rate under applicable non-bankruptcy law, (ii) such other treatment agreed to by the Holder of the Allowed Priority Tax Claim and the Debtor, provided such treatment is on more favorable terms to the Debtor than the treatment set forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash on the Effective Date or as soon as practicable after the date such Claim(s) become an Allowed Priority Tax Claim. Based upon the Debtor's Schedules and records, and Filed Proofs of Claim, the Debtor

projects an aggregate of $13,919.97 of Allowed Priority Tax Claims. <u>See</u>, Exhibit "1" for a list of the projected maximum Allowed Priority Tax Claims.

**V.**

**<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

As required by the Bankruptcy Code, this Plan places Claims and Interests into various Classes according to their right to priority and other relative rights.  This Plan specifies whether each Class of Claims or Interests is impaired or unimpaired, and this Plan sets forth the treatment each Class will receive.  The table below lists the Classes of Claims established under this Plan and states whether each particular Class is impaired or left unimpaired by this Plan.  A Class is "unimpaired" if this Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

| CLASSIFICATION OF HOLDERS OF SECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| Class 1.1 | Consists of Holders of all Secured Tax Claims.  The Holders of all Allowed Secured Tax Claims will receive 100% payment from Available Cash on the later to occur of the Effective Date or as soon as practicable after the date such Claim(s) become(s) an Allowed Secured Claim.  The Debtor estimates the total amount to be paid to this Class will be approximately $2,168.44 consisting of the alleged Secured Claims of: (i) Plano Independent School District in the amount of $1,067.35 as described in Proof of Claim No. 1 Filed with the Bankruptcy Court; (ii) Collin County Tax Assessor Collector in the amount of $1,000.00 as described in Proof of Claim No. 2 Filed with the Bankruptcy Court; and (iii) Los Angeles County Tax Collector in the amount of $101.09 as described in Proof of Claim No. 3 Filed with the Bankruptcy Court. | Unimpaired |
| Class 1.2 | Consists of Holders of all Other Secured Claims.  While the Debtor estimates that the amount due will be $0.00, Holders of Allowed Other Secured Claims, if any, will receive 100% payment from Available Cash on the later to occur of the Effective Date or as soon as practicable after the date such Claim(s) becomes an Allowed Other Secured Claim. | Unimpaired |

| CLASSIFICATION OF HOLDERS OF PRIORITY UNSECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| Class 2.1 | Consists of Holders of Non-Tax Priority Claims that fall within Bankruptcy Code Sections 507(a)(4), (5), (6) and (7).  While the Debtor estimates that the amount due will be $0.00, Holders of Allowed Non-Tax Priority Claims, if any, will receive 100% payment from Available Cash on the later to occur of the Effective Date or as soon as practicable after the date such Claim(s) becomes an Allowed Non-Tax Priority Claim. | Unimpaired |

| CLASSIFICATION OF HOLDERS OF GENERAL UNSECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| Class 3.1 | Consists of Holders of Convenience Claims, in the approximate amount of $554,869.29, of which approximately $509,235.85 consists of unused customer gift cards which will be honored by the Debtor in the ordinary course of its business. See, Exhibit "2" for a list of the projected maximum Allowed Class 3.1 Claims. The Holders of all Allowed Convenience Claims will receive 100% payment (or value as to Holders of gift cards) from Available Cash on the later to occur of the Effective Date or as soon as practicable after the date such Claim(s) becomes an Allowed Convenience Claim. | Unimpaired |

| CLASSIFICATION OF HOLDERS OF GENERAL UNSECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| Class 3.2 | Consists of Holders of General Unsecured Claims, in the approximate amount of $8,394,712.52. <u>See</u>, Exhibit "3" for a list of the projected maximum Allowed Class 3.2 Claims.<br><br>The Holder(s) of Allowed Class 3.2 Claims will receive from Projected disposable Income a Pro Rata payment of the Holder's Allowed Claim with no interest accruing thereon in semi-annual payments for a three (3) year period commencing on the Effective Date.<br><br>This Class includes the Claim of U.S. Bank on account of the U.S. Bank Note in the principal amount of $1,188,265.00 for monies loaned to the Debtor pursuant to the U.S. Bank Loan Documents and the Payment Protection Program administered by the U.S. Small Business Administration ("<u>SBA</u>") in accordance with the Coronavirus Aid, Relief, and Economic Security Act. On November 10, 2021, U.S. Bank sent a letter advising the forgiveness application submitted by the Debtor was approved in full by U.S. Bank.  U.S. Bank also advised that on November 9, 2021, it submitted its decision on the loan forgiveness application to the SBA for their final review, and that the SBA has up to 90 days to provide U.S. Bank with their final decision on the forgiveness application.  If the SBA approves the loan forgiveness application, then the Claim of U.S. Bank on account of the U.S. Loan Documents will be $0.00.  In that case, the projected Distributions to Holders of Allowed General Unsecured Claims will be approximately 29.4%.  In the event that the SBA does not approve the loan forgiveness application, then the Claim of U.S. Bank on account of the U.S. Loan Documents may be as high as $1,192,456.93 when taking into account accrued unpaid interest.  In that case, the projected Distributions to Holders of Allowed General Unsecured Claims will be approximately 25.2%. | Impaired |
| Class 3.3 | Consists of Holders of Subordinated Claims, in the approximate amount of $43,589,902.13. <u>See</u>, Exhibit "4" for a list of the projected maximum Allowed Class 3.3 Claims.  The Class of Allowed Subordinated Claims will retain their Allowed Claims but not receive any Distributions under this Plan until Holders of Allowed General Unsecured Claims are paid their Pro Rata share of Projected Disposable Income under this Plan. | Impaired |

| CLASSIFICATION OF HOLDERS OF INTERESTS | | |
|---|---|---|
| **Class** | **Interest Holders** | **Impaired Status** |
| Class 4.1 | Consists of LJ USA General Partnership as the sole Holder of all Allowed Interests in the Debtor. The Class of Allowed Interest Holders will retain their Interests in the Debtor. | Unimpaired |

**VI.**

**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

Based on the foregoing, the following is this Plan's treatment of Allowed Claims and Interests.

**6.1    Class 1.1 – Secured Tax Claims.**

Class 1.1 consists of all Secured Tax Claims. The treatment of this Class under this Plan shall be as follows:

(a)    Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, and to the extent such Allowed Secured Tax Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Secured Tax Claim, each Holder thereof shall receive, at the option of the Debtor: (i) payment in full in Available Cash of the due and unpaid portion of its Allowed Secured Tax Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y) as soon as practicable after the date such Allowed Secured Tax Claim becomes due and payable; (ii) the collateral securing its Allowed Secured Tax Claim; (iii) reinstatement of its Allowed Secured Tax Claim; or (iv) such other treatment rendering its Allowed Secured Tax Claim unimpaired in accordance with Section 1124 of the Bankruptcy Code; and

(b)    Class 1.1 is unimpaired by this Plan, and each Holder of a Class 1.1 Secured Tax Claim is conclusively presumed to have accepted this Plan pursuant to

1    Section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1.1 Secured Tax

2    Claims are not entitled to vote to accept or reject this Plan.

3    **6.2**    **Class 1.2 – Other Secured Claims.**

4    Class 1.2 consists of Other Secured Claims. The treatment of this Class under this Plan

5    shall be as follows:

6    (a)    Except to the extent that a Holder of an Allowed Other Secured Claim

7    agrees to less favorable treatment, and to the extent such Allowed Other Secured Claim

8    has not already been paid in full during the Chapter 11 Case, in full and final satisfaction,

9    settlement, release, and discharge of, and in exchange for each Allowed Other Secured

10    Claim, each Holder thereof shall receive, at the option of the Debtor: (i) payment in full

11    in Available Cash of the due and unpaid portion of its Allowed Other Secured Claim on

12    the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y)

13    as soon as practicable after the date such Allowed Other Secured Claim becomes due and

14    payable; (ii) the collateral securing its Allowed Other Secured Claim; (iii) reinstatement

15    of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed

16    Other Secured Claim unimpaired in accordance with Section 1124 of the Bankruptcy

17    Code; and

18    (b)    Class 1.2 is unimpaired by this Plan, and each Holder of a Class 1.2 Other

19    Secured Claim is conclusively presumed to have accepted this Plan pursuant to Section

20    1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1.2 Other Secured

21    Claims are not entitled to vote to accept or reject this Plan.

22    **6.3**    **Class 2.1 – Non-Tax Priority Claims.**

23    Class 2.1 consists of Non-Tax Priority Claims under this Plan. The treatment of this Class

24    under this Plan shall be as follows:

25    (a)    Except to the extent that a Holder of an Allowed Non-Tax Priority Claim

26    agrees to less favorable treatment, and to the extent such Allowed Non-Tax Priority

27    Claim has not already been paid in full during the Chapter 11 Case, in full and final

28    satisfaction, settlement, release, and discharge of, and in exchange for each Allowed

1    Non-Tax Priority Claim, each Holder thereof shall receive (a) Available Cash in an

2    amount equal to the due and unpaid portion of such Allowed Non-Tax Priority Claim on

3    the later of (i) the Effective Date (or as soon thereafter as reasonably practicable) or (ii)

4    as soon as practicable after the date such Allowed Non-Tax Priority Claim becomes due

5    in the ordinary course of business in accordance with the terms and conditions of the

6    particular transaction, contract, or other agreement giving rise to such Allowed Non-Tax

7    Priority Claim; (b) such other treatment to render such Allowed Non-Tax Priority Claim

8    unimpaired under Section 1124 of the Bankruptcy Code; or (c) such other treatment as

9    such Holder may agree to or otherwise permitted by Section 1129(a)(9) of the

10    Bankruptcy Code; and

11        (b)    Class 2.1 is unimpaired by this Plan, and each Holder of a Class 2.1 Non-

12    Tax Priority Claim is conclusively presumed to have accepted this Plan pursuant to

13    Section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 2.1 Non-Tax

14    Priority Claims are not entitled to vote to accept or reject this Plan.

15    **6.4    <u>Class 3.1 - Convenience Claims</u>.**

16    Class 3.1 consists of all Convenience Claims under this Plan. The treatment of this Class

17    under this Plan shall be as follows:

18        (a)    Except to the extent that a Holder of an Allowed Convenience Claim

19    agrees to less favorable treatment, and to the extent such Allowed Convenience Claim

20    has not already been paid in full during the Chapter 11 Case, in full and final satisfaction,

21    settlement, release, and discharge of, and in exchange for each Allowed Convenience

22    Claim, each Holder thereof shall receive (a) Available Cash in an amount equal to the due

23    and unpaid portion of such Allowed Convenience Claim on the later of (i) the Effective

24    Date (or as soon thereafter as reasonably practicable) or (ii) as soon as practicable after

25    the date such Allowed Convenience Claim becomes due in the ordinary course of

26    business in accordance with the terms and conditions of the particular transaction,

27    contract, or other agreement giving rise to such Allowed Convenience Claim; (b) such

28    other treatment to render such Allowed Convenience Claim unimpaired under Section

1    1124 of the Bankruptcy Code; or (c) such other treatment as such Holder may agree to or

2    otherwise permitted by Section 1129(a)(9) of the Bankruptcy Code; and

3          (b)    Class 3.1 is unimpaired by this Plan, and each Holder of a Class 3.1

4    Convenience Claim is conclusively presumed to have accepted this Plan pursuant to

5    Section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3.1

6    Convenience Claims are not entitled to vote to accept or reject this Plan.

7    **6.5**     **Class 3.2 – General Unsecured Claims.**

8    Class 3.2 consists of all General Unsecured Claims that are not Convenience Claims or

9    Subordinated Claims under this Plan. The treatment of this Class under this Plan shall be as

10    follows:

11          (a)    Except to the extent that a Holder of an Allowed General Unsecured

12    Claim agrees to less favorable treatment, and to the extent such Allowed General

13    Unsecured Claim has not already been paid in full during the Chapter 11 Case, in full and

14    final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed

15    General Unsecured Claim, each Holder thereof shall receive on the later of (i) the

16    Effective Date (or as soon thereafter as reasonably practicable) or (ii) as soon as

17    practicable after the date such Allowed General Unsecured Claim becomes due in the

18    ordinary course of business in accordance with the terms and conditions of the particular

19    transaction, contract, or other agreement giving rise to such Allowed General Unsecured

20    Claim, the Holder(s) of Allowed Class 3.2 Claims will receive from Projected Disposable

21    Income, a Pro Rata payment of the Holder's Allowed General Unsecured Claim with no

22    interest accruing thereon in semi-annual installment payments for the three (3) year

23    period after the Effective Date as follows:

24          (i)    Distribution of the Projected Disposable Income for the period

25    commencing on the Effective Date through June 30, 2022 will be paid on July 15,

26    2022;

27

28

(ii)     Distribution of the Projected Disposable Income for the period commencing on July 1, 2022 through December 31, 2022 will be paid on January 15, 2023;

(iii)     Distribution of the Projected Disposable Income for the period commencing on January 1, 2023 through June 30, 2023 will be paid on July 15, 2023;

(iv)     Distribution of the Projected Disposable Income for the period commencing on July 1, 2023 through December 31, 2023 will be paid on January 15, 2024;

(v)     Distribution of the Projected Disposable Income for the period commencing on January 1, 2024 through June 30, 2024 will be paid on July 15, 2024;

(vi)     Distribution of the Projected Disposable Income for the period commencing on July 1, 2024 through December 31, 2024 will be paid on January 15, 2025; and

(vii)     Distribution of the Projected Disposable Income for the period commencing on January 1, 2025 through the balance of the three (3) year period after the Effective Date will be paid on July 15, 2025.

(b)     Class 3.2 is impaired by this Plan, and each Holder of a Class 3.2 General Unsecured Claim is entitled to vote to accept or reject this Plan.

**6.6     Class 3.3 – Subordinated Claims.**

Class 3.3 consists of all Subordinated Claims under this Plan. The treatment of this Class under this Plan shall be as follows:

(a)     The Holder(s) of Allowed Intercompany Claims shall retain their Claims but will receive no Distributions under and during the term of this Plan. The Holder(s) of such Claims will be able to pursue their rights and remedies against the Debtor after the Debtor has fully consummated this Plan, including making all payments required to be

1  made under this Plan.  To the extent the Debtor obtains a discharge, Allowed

2  Intercompany Claims shall be excluded from such discharge; and

3           (b)      Class 3.3 is impaired by this Plan, and each Holder of a Class 3.3

4  Subordinated Claim is entitled to vote to accept or reject this Plan.

5  **6.7    Class 4.1 - Interests.**

6           Class 4.1 consists of all Interests of the Debtor, which are 100% held by LJ USA General

7  Partnership. The treatment of this Class under this Plan shall be as follows:

8           (a)      The Holders of Interests shall not receive any Distributions from the

9  Debtor on account of such Allowed Interest until all Claims of higher priority have been

10  paid in full in accordance with the terms of this Plan or the Holder(s) of such higher

11  priority Claim(s) have settled, waived or released their Claim(s) against the Debtor; and

12           (b)      Each Holder of a Class 4.1 Interest is conclusively presumed to have

13  accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, the

14  Holders of Class 4.1 Interests are not entitled to vote to accept or reject this Plan.

15  **VII.**

16  **BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

17  **7.1    Best Interest of Creditors Test.**  Pursuant to Section 1129(a)(7) of the

18  Bankruptcy Code, a plan cannot be confirmed unless the Bankruptcy Court determines that

19  Distributions under this Plan to all Holders of Claims and Interests who have not accepted this

20  Plan, and whose Claims and Interests are classified in Classes that are impaired under this Plan,

21  are no less than those which they would receive in a liquidation proceeding under Chapter 7.

22  This test must be satisfied even if a plan is accepted by each impaired class of claims and

23  interests.   This test, which is often referred to as the "best interests" test, requires the bankruptcy

24  court to find either that (i) all holders of claims and interests in an impaired class of claims or

25  interests have accepted the plan, or (ii) the plan will provide each holder of claims and interests

26  in an impaired class who has not accepted the plan with a recovery of property of a value, as of

27  the effective date of the plan, that is not less than the amount that such holder would receive if

28  the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To satisfy the "best interest" test, the Bankruptcy Court must reach a conclusion regarding the probable distribution to the holders in each impaired class of claims and interests if the debtor were liquidated in a Chapter 7 proceeding.  The first step in this process is to determine the "liquidation value" that would be generated from a forced sale of the debtor's assets by a Chapter 7 trustee. The second step requires the application of the projected liquidation proceeds in accordance with the various rights of creditors holding liens on the property.  For example, if a claimant holds a lien on corporate equipment but not inventory, the proceeds of the liquidation derived from this asset would have to be applied against this claimant's debt.  If the proceeds were sufficient to retire the claimant's secured claim, then the claimant's claim would be paid in full.  However, if the liquidation proceeds are not sufficient, then that portion of the claim which is not satisfied from the sale proceeds is treated as an unsecured claim and shares pro rata at this distribution level.  This process must then be repeated as to each collateral category to ensure that the claims secured by collateral are paid from their collateral and only from their collateral.

Once all of the claims secured by liens on assets of a debtor's estate are deducted from the projected liquidation proceeds of the sale of the claimant's collateral, then the costs and expenses associated with the liquidation of the estate incurred by the Chapter 7 trustee must be paid.  These costs would include the compensation of the trustee, as well as compensation of counsel and other professionals retained by the trustee, and asset disposition expenses.

After payment of the costs and expenses associated with the Chapter 7 liquidation are paid, all unpaid administrative expenses incurred by the debtor in its Chapter 11 case (such as compensation of attorneys, financial advisors, and restructuring consultants) that are allowed in the Chapter 7 case, and all unpaid claims arising from the operations of the debtor during the pendency of the Chapter 11 case, must be paid.

After the payment of Chapter 11 administrative expenses, the remaining liquidation proceeds would be used to pay priority claims, such as tax and wage claims that are entitled to priority under the Bankruptcy Code. Thereafter the remaining liquidation proceeds would be made available to pay general unsecured claims.  Finally, to the extent that any proceeds remain

1    after paying all allowed claims, they would be distributed to interest holders in accordance with

2    their liquidation priorities.

3        Attached hereto as Exhibit "5" is a liquidation analysis prepared by the Debtor that

4    estimates the probable liquidation value of the Debtor's assets, and applies the foregoing

5    liquidation methodology to the estimated Claims against the Estate in a Chapter 7 liquidation in

6    an effort to quantify what each Class of Creditors and Interest Holders would receive in a

7    Chapter 7 liquidation.  Any liquidation analysis of this nature entails a significant degree of

8    estimation and projection regarding both probable asset value and probable Allowed Claim

9    totals.  For example, in preparing Exhibit "5," the Debtor has necessarily quantified what the

10   Debtor believes will be the Allowed Claims after claim objections within each Class.  The

11   projected Allowed Administrative Claims set forth on Exhibit "5" are based on fees for

12   professional services, which have not been completed and are subject to final Bankruptcy Court

13   approval.  These and other factors may significantly increase or reduce the Distributions to

14   holders of Allowed Claims.

15       The liquidation analysis shows the liquidation value of the Debtor's Assets, under a

16   hypothetical Chapter 7 proceeding yield an approximate 2.1% Distribution to Creditors.  As set

17   forth in the Plan Financial Projections, the Debtor believes that a combination of the Available

18   Cash, and the Projected Disposable Income from the operations of the Debtor's business, and the

19   other Assets, will result in a 100% Distribution to Holders of Class 1.1, 1.2, 2.1 and 3.1 Allowed

20   Claims and an approximate 25.2% to 29.4% Distribution to Class 3.2 Allowed General

21   Unsecured Claims.  Accordingly, as confirmation of this Plan will yield a substantially higher

22   return to Class 3.2 Allowed General Unsecured Claims than if the Case was converted to a

23   Chapter 7, the Debtor satisfies the best interest of creditors test.

24       **7.2**    **Feasibility.**  In addition, in order to confirm this Plan, the Bankruptcy Court must

25   find that the Debtor will be able to make all payments under this Plan or there is a reasonable

26   likelihood that the Debtor will be able to make all the payments under this Plan.  This

27   requirement is imposed by Section 1191(c)(3)(A) of the Bankruptcy Code.  As set forth below,

28   this requirement is also satisfied.

1    The Debtor shall make all payments due under this Plan to Holders of Allowed Claims

2  from a combination of the Available Cash, the Projected Disposable Income from the operations

3  of the Debtor's business, and the other Assets.  The Debtor's ability to make all payments due

4  under this Plan is based upon the Plan Financial Projections attached hereto as Exhibit "6" which

5  projections are premised upon the Debtor's recent historical business operations.

6                                              **VIII.**

7                 **ACCEPTANCE OR REJECTION OF THIS PLAN**

8    **8.1    Introduction**.  PERSONS OR ENTITIES CONCERNED WITH

9  CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS

10  BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY

11  COMPLEX.  The following discussion is intended solely for the purpose of alerting readers

12  about basic confirmation issues, which they may wish to consider, as well as certain deadlines

13  for filing Claims.  The Debtor cannot represent that the discussion contained below is a complete

14  summary of the law on this topic.

15    Many requirements must be met before the Bankruptcy Court can confirm this Plan.

16  Some of the requirements include that this Plan must be proposed in good faith, acceptance of

17  this Plan, whether this Plan pays creditors at least as much as creditors would receive in a

18  Chapter 7 liquidation (discussed above), and whether this Plan is feasible.  The requirements

19  described herein are <u>not</u> the only requirements for confirmation.

20    **8.2    Who May Object to Confirmation of this Plan**.  Any party in interest may

21  object to the confirmation of this Plan.

22    **8.3    Who May Vote to Accept/Reject this Plan**.  A Holder of a Claim or Interest has

23  a right to vote for or against this Plan if that Holder of the Claim or Interest has a Claim which is

24  both (1) Allowed or Allowed for voting purposes, and (2) Classified in an impaired Class.

25    **8.4    What Is an Allowed Claim/Interest**.  As noted above, a Holder of a Claim or

26  Interest must first have an Allowed Claim or Allowed Interest to vote.

27    **8.5    What Is an Impaired Class**.  A Class is impaired if this Plan alters the legal,

28  equitable, or contractual rights of the Claims or Interests in that Class, other than the right to

accelerate the Claim upon certain kinds of defaults.  In this case, the Debtor believes that Classes 3.2, and 3.3 are impaired and, therefore, are entitled to vote.

**8.6    Who Is Not Entitled to Vote.**  The following four types of Claims are <u>not</u> entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3) and (a)(8) and Claims in Classes that do not receive or retain any value under this Plan.  Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted this Plan.  Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(2), (a)(3) and (a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes that do not receive or retain any property under this Plan do not vote because such Classes are deemed to have rejected this Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THIS PLAN.

**8.7    Who Can Vote in More than One Class.**  A creditor whose Claim has been Allowed in part as a Secured Claim and in part as a General Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the General Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class and may vote the Claims held in each Class.

**8.8    Votes Necessary for a Class to Accept this Plan.**  A Class of Claims is deemed to have accepted this Plan when more than one-half (1/2) in number and at least two-thirds (2/3rds) in dollar amount of the Claims *that actually voted*, vote to accept this Plan.  A Class of Interests is deemed to have accepted this Plan when Holders of at least two-thirds (2/3rds) in amount of the Interest Holders of such Class which actually vote, vote to accept this Plan.

**8.9    Treatment of Nonaccepting Class(es).**  As noted above, even if there are impaired Classes that do not accept the proposed Plan, the Bankruptcy Court may nonetheless confirm this Plan if the nonaccepting Classes are treated in the manner required by the Bankruptcy Code and at least one impaired Class of Claims accepts this Plan.  The process by

which a plan may be confirmed and become binding on non-accepting Classes is commonly referred to as "cramdown." The Bankruptcy Code allows this Plan to be "crammed down" on nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting requirements of the Bankruptcy Code and if this Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not voted to accept this Plan, as set forth in Section 1191 of the Bankruptcy Code and applicable case law.

**8.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).** The Plan Proponent will ask the Bankruptcy Court to confirm this Plan by cramdown on any impaired Class if such Class does not vote to accept this Plan.

## IX.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THIS PLAN

**9.1    Introduction.** This Section is intended to address how the Debtor intends to fund and to implement the obligations to Creditors under this Plan. This Section provides information regarding funding sources for Plan obligations, and other material issues bearing upon the performance under this Plan.

**9.2    Source of Funding Payments Due Under this Plan.** The Distribution Agent shall make all payments due under this Plan to holders of Allowed Claims from a combination of the Available Cash, Projected Disposable Income, or other Assets. The prosecution and liquidation of the Debtor's Avoidance Actions, if any, could result in additional funds to pay Allowed Claims. The Debtor and its counsel are investigating prospective Avoidance Actions, but have not yet completed their investigation. Therefore, at this time the Debtor has valued such Avoidance Actions at zero, although the Debtor does not waive its right to pursue such actions.

**9.3    Representative of the Estate.** The Debtor shall be representative of the Estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code for the purpose of performing the duties and exercising the rights and remedies granted to the Debtor.

**9.4    Causes of Action.** Unless Causes of Action are expressly waived, relinquished, released, compromised or settled in this Plan or in a Final Order, all rights with respect to such

1  Causes of Action are reserved and the Debtor shall have the sole and exclusive right, but not

2  obligation, to File, litigate, settle, adjust, enforce, collect or abandon all Causes of Action.

3      **9.5**    **Compromise of Causes of Action.**  The Debtor shall be entitled to compromise

4  any controversies relating to any Cause of Action that it shall have Filed, subject to appropriate

5  notice to any Creditors and parties-in-interest and approval of the Bankruptcy Court.

6      **9.6**    **Collection of Causes of Action Recoveries.**  All Causes of Action Recoveries

7  realized or obtained by the Debtor shall be promptly deposited into a Distribution Account(s).

8  Except as otherwise provided in this Plan and the Confirmation Order, the Causes of Action

9  Recoveries shall be free and clear of all Claims and Liens and shall only be expended in

10  accordance with the provisions of this Plan.

11      **9.7**    **Remedies Upon Default.**  In the event that the Debtor should default in the

12  performance of any of its obligations hereunder, the aggrieved Creditor or party-in-interest

13  ("Aggrieved Party") shall provide to the Debtor, the Debtor's counsel, and the Trustee (the

14  "Noticed Parties") via email **and** first-class mail, written notice of any such default ("Default

15  Notice").  The Debtor shall have a grace period of ten (10) calendar days after the Debtor's

16  counsel's receipt of the Default Notice ("Grace Period") within which to cure such default.  If the

17  Debtor cures such default, the Aggrieved Party shall promptly provide written acknowledgement

18  of the Debtor's cure to the Debtor and all other Noticed Parties.  In the event that the Debtor fails

19  to cure any default under this Plan within the Grace Period (an "Event of Default"), the

20  Aggrieved Party may File with the Bankruptcy Court, and serve on all Noticed Parties, a motion

21  or application on regular notice as provided under the Bankruptcy Rules (i) compelling the

22  Debtor's performance under this Plan, (ii) requesting conversion or dismissal of the Debtor's

23  Chapter 11 Case, as well as other rights and remedies against the Debtor under applicable law.

24                          **X.**

25                  **DISTRIBUTIONS**

26      **10.1**    **Distribution Agent.**  The Distribution Agent may employ one or more sub-agents

27  on such terms and conditions as it may agree in its discretion and pay such sub-agent as a Post-

28  Confirmation Expense from the Distribution Accounts.  The Distribution Agent shall not be

required to provide any bond in connection with the making of any Distributions pursuant to this Plan.

### 10.2    Distributions.

(a)    **Dates of Distribution(s).**  Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

(b)    **Report of Distribution(s).**  The Disbursing Agent will upon request promptly provide the Trustee with copies of documentation reflecting any Distributions made under this Plan.

(c)    **Limitation on Liability.**  Neither the Debtor, nor any of its respective employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of this Plan and the making or withholding of Distributions pursuant to this Plan, or (ii) any change in the value of Distributions made pursuant to this Plan resulting from any delays in making such Distributions in accordance with this Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

### 10.3    Old Instruments and Securities.

(a)    **Surrender and Cancellation of Instruments and Securities.**  Except as otherwise provided in this Plan, as a condition to receiving any Distribution pursuant to this Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing, an existing Claim(s) against the Debtor must surrender such Instrument or Security to the Debtor.

(b)    **Cancellation of Liens.**  Except as otherwise provided in this Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the

1  Person holding such Secured Claim shall be authorized and directed to release any

2  collateral or other property of the Debtor (including, without limitation, any cash

3  collateral) held by such Person and to take such actions as may be requested by the

4  Debtor to evidence the release of such Lien, including, without limitation, the execution,

5  delivery and Filing or recording of such releases as may be requested by the Debtor.

6      **10.4    De Minimis Distributions and Fractional Shares.**  No Cash payment of less

7  than ten dollars ($10.00) shall be made to any Holder of Claims unless a request therefore is

8  made in writing to the Distribution Agent.  Whenever payment of a fraction of a cent would

9  otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the

10 nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this

11 Section shall, after the last Distribution on account of Allowed Claims in the applicable Class, be

12 treated as "Unclaimed Property" under this Plan.

13     **10.5    Delivery of Distribution(s).**  Except as provided in this Plan with respect to

14 Unclaimed Property, Distribution to Holders of Allowed Claims and Allowed Administrative

15 Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed

16 Claim that has Filed a Proof of Claim, at the address for such Holder as maintained by the

17 official claims agent for the Debtor; (2) with respect to each Holder of an Allowed Claim that

18 has not Filed a Proof of Claim, at the address reflected on the Schedules Filed by the Debtor,

19 provided, however, that if the Distribution Agent has received a written notice of a change of

20 address for such Holder, the address set forth in such notice shall be used; or (3) with respect to

21 each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in

22 writing.

23     **10.6    Undeliverable Distribution(s).**  If the Distribution of Cash to the Holder of any

24 Allowed Claim is returned to the Distribution Agent as undeliverable or the Distribution check is

25 not negotiated within ninety (90) days of mailing (any such Distribution being hereinafter

26 referred to as "Unclaimed Property"), no further Distribution shall be made to such Holder

27 unless and until the Distribution Agent is notified in writing of such Holder's then current

28 address.  Subject to the remainder of this Section and the following Section, Unclaimed Property

-43-

1  shall remain in the possession of the Distribution Agent pursuant to this Section, and shall be set

2  aside and (in the case of Cash) held in a segregated account (as to Cash Unclaimed Property) to

3  be maintained by the Distribution Agent until such time as the subject Distribution becomes

4  deliverable.  Nothing contained in this Plan shall require the Distribution Agent or any other

5  Person to attempt to locate such Person.

6       **10.7**    **Disposition of Unclaimed Property.**  If the Person entitled thereto notifies the

7  Distribution Agent of such Person's Claim to a Distribution of Unclaimed Property within ninety

8  (90) days following such Person's initial Distribution Date, the Unclaimed Property distributable

9  to such Person shall be paid or distributed to such Person as soon as practicable.  Any Holder of

10  an Allowed Claim that does not assert a Claim in writing for Unclaimed Property held by the

11  Distribution Agent within ninety (90) days after the Holder's initial Distribution Date shall no

12  longer have any Claim to or Interest in such Unclaimed Property, and shall be forever barred

13  from receiving any distributions under this Plan or otherwise.  In such cases, any Unclaimed

14  Property held for Distribution on account of such Claims shall become Available Cash and

15  deposited into the Distribution Account.

16              **XI.**

17      **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

18       **11.1**    **Standing for Objections to Claims.**  The Debtor shall have the sole and

19  exclusive right to File, prosecute and resolve objections to Claims.  Any objection to a Claim

20  shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or

21  before the applicable Claims Objection Deadline.  The Debtor shall have the right to petition the

22  Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection

23  Deadline if a complete review of all Claims cannot be completed by such date.

24       **11.2**    **Treatment of Disputed Claims and Disputed Liens.**

25          (a)      <u>No Distribution Pending Allowance</u>.  If any portion of a Claim or Lien is a

26  Disputed Claim or Disputed Lien, no payment or distribution provided for under this Plan

27  shall be made on account of such Claim or Lien unless and until such Claim or Lien

28  becomes Allowed.

(b)  <u>Distribution After Allowance</u>.  On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

**XII.**

**<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

**12.1  <u>Executory Contracts Potentially Being Assumed</u>.**  The Debtor shall have until the Confirmation Date to assume or reject any of the executory contracts and unexpired leases attached to this Plan as Exhibit "7."  The Debtor may add any executory contracts or unexpired leases to these exhibits, or delete any executory contract or unexpired lease therefrom up to and including the Confirmation Date.

**12.2  <u>Executory Contracts Being Rejected</u>.**  The Debtor hereby rejects those executory contracts and unexpired leases attached to this Plan as Exhibit "8."  The Debtor reserves the right to amend Exhibit "8" to this Plan to include additional unexpired leases and executory contracts on this exhibit, or to delete unexpired leases and executory contracts from this exhibit, up to and including the Confirmation Date. All executory contracts or unexpired leases not rejected by the Confirmation Date shall be deemed assumed.

**12.3  <u>Bar Date for Rejection Damages</u>.**  Any Claim arising out of the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtor, the Estate, their Affiliates, or their successors, and shall not be entitled to any Distribution under this Plan, unless a Proof of Claim for such Claim is Filed and served on the Debtor on or before the Claims Bar Date.

**12.4  <u>Changes in Rates Subject to Regulatory Commission Approval</u>.** The Debtor is not subject to governmental regulatory commission approval of its rates.

# XIII.

## LIMITATION OF LIABILITY

**13.1    No Liability for Solicitation or Participation.**  As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

**13.2    Limitation of Liability.**  Effective as of the Effective Date, not the Debtor, or any of its Affiliates, nor any of their respective members, officers, directors, employees and other agents, advisors, attorneys and accountants shall have or incur any liability to any Holder of any Claim or Interest or any other Person for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan, the Case or the property to be distributed under this Plan except:  (a) the Debtor shall be liable for the performance of obligations assumed by it or imposed upon it under or by this Plan; and (b) for liability based on willful misconduct as finally determined by a Final Order of the Bankruptcy Court.  The Debtor, and its Affiliates, and each of their respective officers, directors, employees and other agents, advisors, attorneys and accountants shall be entitled to rely, in every respect, upon the advice of counsel with respect to their duties and responsibilities under or with respect to this Plan.

# XIV.

## CONDITIONS TO CONFIRMATION AND

## EFFECTIVENESS OF THIS PLAN

**14.1    Conditions Precedent to Plan Confirmation.**  The only condition precedent to confirmation of this Plan is that the Bankruptcy Court shall have entered a Confirmation Order in form and substance reasonably acceptable to the Debtor.

**14.2**    **Conditions Precedent to Plan Effectiveness**.  The only condition precedent to the effectiveness of this Plan and the occurrence of the Effective Date is that the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the Debtor.

**14.3**    **Waiver of Conditions.**  The conditions set forth in Sections 14.1 and 14.2 hereof may be waived by the Debtor without notice, leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain the Confirmation Order and consummate this Plan.

**XV.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to Section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of this Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

**15.1**    To hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

**15.2**    To consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or the Estate, including, without limitation, any Avoidance Action;

**15.3**    To hear and determine any motions pending on the Effective Date to assume, assume and assign or reject any executory contract or unexpired lease and to determine the allowance of any Claim resulting therefrom;

**15.4**    To enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's Assets, wherever located;

**15.5**    To hear and determine any and all required applications for allowance of compensation and reimbursement of expenses of Professionals;

**15.6**    To hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of this Plan and any of the documents intended to implement the provisions of this Plan or any other matters to be resolved by the Bankruptcy Court under the terms of this Plan;

**15.7**    To hear and determine any motions or contested matters involving Taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor, including, without limitation, matters involving federal, state and local Taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

**15.8**    To hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date or that may be commenced after the Effective Date as provided in this Plan;

**15.9**    To hear and determine any and all disputes or other issues that may arise between the Debtor and others;

**15.10**    To effectuate Distributions under, and performance of, the provisions of this Plan;

**15.11**    To hear and determine any motion to modify any provision of this Plan after confirmation of this Plan, and, if in the best interests of the Debtor, and Creditors, modification of this Plan even after this Plan has been substantially consummated;

**15.12**    To correct any defect, cure any omission or reconcile any inconsistency in this Plan, the exhibits to this Plan and any documents executed in connection with this Plan, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan;

**15.13**    To grant a discharge;

**15.14**    To determine such other matters as may be provided for in the Confirmation Order or as may from time-to-time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

**15.15**    To enforce all orders, judgments, injunctions and exculpations issued or entered in connection with the Case or this Plan;

-48-

1    **15.16**    To enter such orders as may be necessary or appropriate in aid of Confirmation

2    and to facilitate implementation of this Plan, including, without limitation, any orders as may be

3    appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified

4    or vacated;

5    **15.17**    To determine any other matter not inconsistent with the Bankruptcy Code;

6    **15.18**    To hear and determine any motion to reopen the Case; and

7    **15.19**    To issue a final decree closing the Case.

8    **XVI.**

9    **MODIFICATION OR WITHDRAWAL OF PLAN**

10    **16.1**    **Modification of Plan.**    At any time prior to confirmation of this Plan, the Debtor

11    may supplement, amend, withdraw or modify this Plan.  After confirmation of this Plan, the

12    Debtor may (i) apply to the Bankruptcy Court, pursuant to Section 1193 of the Bankruptcy Code,

13    to modify this Plan; and (ii) apply to the Bankruptcy Court to remedy defects or omissions in this

14    Plan or to reconcile inconsistencies in this Plan.

15    **16.2**    **Nonconsensual Confirmation.**    In the event that any impaired Class of Claims or

16    Interests shall fail to accept this Plan, the Debtor (i) may request that the Bankruptcy Court

17    confirm this Plan in accordance with Section 1191 of the Bankruptcy Code, and (ii) in

18    accordance with this Plan, may modify this Plan in accordance with Section 1193 of the

19    Bankruptcy Code.

20    **XVII.**

21    **MISCELLANEOUS**

22    **17.1**    **Payment of Statutory Fees.**    All fees due and payable pursuant to Section 1930

23    of Title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to

24    the extent such fees are disputed, an adequate reserve shall have been established and set aside

25    for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The

26    Distribution Agent shall be responsible for timely payment of fees due and payable after the

27    Effective Date and until the Debtor's Case is closed, to the extent required by Section 1930 of

28    Title 28 of the United States Code.

**17.2    Discharge of Debtor and Injunction.**  If this Plan is confirmed under Section 1191(a) of the Bankruptcy Code, on the Effective Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in Section 1141(d)(6) of the Bankruptcy Code.

If this Plan is confirmed under Section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for or in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code. The Debtor will not be discharged from: (i) any Intercompany Claim; (ii) any debt on which the last payment is due after the first five (5) years of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code; or (iii) excepted from discharge under Section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

The rights afforded in this Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor-in-Possession, or any of their Assets or properties.  Except as otherwise provided in this Plan or the Confirmation Order: (i) upon discharge of the Debtor, the Debtor shall be deemed discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code from all Claims, including, but not limited to, demands, liabilities, and Claims that arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim based on such debt is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code or (c) the holder of a Claim based on such debt has accepted this Plan; and (ii) all Persons shall be precluded from asserting against the Debtor, their successors, or their assets or properties any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that

occurred prior to the Confirmation Date.  Except as otherwise provided in this Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

Except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt or Claim discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim:  (1) commencing or continuing in any manner any action or other proceeding against the Debtor, their successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to any of the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.  Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**17.3    Payment Dates.**  Whenever any payment or Distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the immediately following Business Day.

**17.4    Headings.**  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

**17.5    Other Documents and Actions.**  The Debtor may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**17.6    Notices.**  All notices and requests in connection with this Plan shall be in writing and shall be hand delivered or sent by email, with a copy sent by first-class mail, addressed to:

> Richard H. Golubow
> Winthrop Golubow Hollander, LLP
> 1301 Dove Street, Suite 500
> Newport Beach, CA 92660
> E-Mail: rgolubow@wghlawyers.com

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record. Any such Person may designate in writing any other address for purposes of this Section, which designation will be effective on receipt.

**17.7    Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

**17.8    Binding Effect.**  This Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Debtor, Holders of Claims, Holders of Interests, and their respective successors and assigns.

**17.9    Successors and Assigns.**  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**17.10    Severability of Plan Provisions.**  If, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of this Plan, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or

delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of this Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**17.11  No Waiver.**  The failure of the Debtor or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtor's right to object to such Claim, in whole or in part.

**17.12  Exemption from Certain Transfer Taxes and Recording Fees.**  Pursuant to Section 1146 of the Bankruptcy Code, any transfers from the Debtor to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of the Debtor's real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**17.13  Post-Confirmation Status Report.**  Unless otherwise ordered by the Bankruptcy Court, within one hundred eighty (180) days following the entry of the Confirmation Order, the Debtor shall File a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the U.S. Trustee, the Trustee, the twenty (20) largest unsecured creditors, and those parties who have requested special notice.  Unless otherwise ordered by the Bankruptcy Court, further status reports shall be Filed every one hundred eighty (180) days and served on the same entities.

1    **17.14    Post-Confirmation Conversion/Dismissal.**  As set forth in Section 9.7 above, a

2    Creditor or party in interest may bring a motion to convert or dismiss the case under Section

3    1112(b) of the Bankruptcy Code, after this Plan is confirmed, if there is an Event of Default in

4    performing this Plan.  The Debtor reserves the right to object to any motion for conversion or

5    dismissal.  If the Bankruptcy Court orders the Case converted to Chapter 7 after this Plan is

6    confirmed, then all property that had been property of the Chapter 11 Estate, and that has not

7    been disbursed pursuant to this Plan, will revest in the Chapter 7 estate.

8    **17.15    Final Decree.**  Once the Estate has been fully administered, as referred to in

9    Bankruptcy Rule 3022, the Debtor, or other parties as the Bankruptcy Court shall designate in

10    the Confirmation Order, shall File a motion with the Bankruptcy Court to obtain a final decree to

11    close the Debtor's Case.

12    **Respectfully Submitted,**

13    DATED:  December 15, 2021           **LORNA JANE USA, INC.,**
                                            a California corporation
14

15

16
                                            By:_____
17                                                    Richard Munro
                                            Its: Chief Restructuring Officer
18

19
     **SUBMITTED BY:**
20

21    **WINTHROP GOLUBOW HOLLANDER, LLP**

22    By:___*/s/ Richard H. Golubow*_____
                Richard H. Golubow
23    General Insolvency Counsel for Lorna Jane USA, Inc.,
      Debtor and Debtor-in-Possession
24

25

26

27

28

EXHIBIT 1

**EXHIBIT 1 – SCHEDULE OF UNCLASSIFIED PRIORITY TAX CLAIMS**

| | | Filed Claims | | Scheduled Claims | | Projected[1] |
|---|---|---|---|---|---|---|
| **Class** | **Name** | Claim Amount | Claim Number | Amount | D/C/U* | Maximum Allowed Claim Amount |
| N/A | CA Dept. Tax & Fee Administration | 357.00 | 16 | | | 357.00 |
| N/A | CA Franchise Tax Board | 2,489.67 | 17 | | | 2,489.67 |
| N/A | Collin County TX Tax Assessor | | | 1,546.50 | D | 1,546.50 |
| N/A | Orange County CA Weights & Measures | | | 113.75 | | 113.75 |
| N/A | Riverside County CA Tax Collector | | | 912.59 | D | 912.59 |
| N/A | San Francisco CA Tax Collector | | | 3,615.89 | | 3,615.89 |
| N/A | Sonoma County CA Tax Collector | | | 2,639.70 | D | 2,639.70 |
| N/A | Travis County TX Tax Assessor | | | 2,244.87 | | 2,244.87 |
| | | | | | | |
| **TOTAL AMOUNT FOR CLASS** | | | | | | **$13,919.97** |

\* Disputed/Contingent/Unliquidated Claim

[1] This schedule is for disclosure and informational purposes only. The Debtor reserves the right to object to allowance of any of the Claims including those identified herein on any grounds under the Bankruptcy Code and applicable non-bankruptcy law.

EXHIBIT 1 - PAGE 1

EXHIBIT 2

**EXHIBIT 2 – SCHEDULE OF ALLOWED CONVENIENCE CLAIMS**

| | | Filed Claims | | Scheduled Claims | | Projected[1] |
|---|---|---|---|---|---|---|
| Class | Name | Claim Amount | Claim Number | Amount | D/C/U* | Maximum Allowed Claim Amount |
| 3.1 | ABM Industry Groups | | | 840.00 | | 840.00 |
| 3.1 | Allstate Benefits | | | 73.00 | | 0.00 |
| 3.1 | Arizona Public Service Company | | | 500.64 | | 500.64 |
| 3.1 | ATT U-verse | | | 1,921.11 | | 1,921.11 |
| 3.1 | ATT Wireless | | | 1,361.04 | | 1.361.04 |
| 3.2 | Bellevue Square Merchants Assn. | | | 804.40 | C, D | 0.00 |
| 3.1 | Brinks | | | 8,345.89 | | 8,345.89 |
| 3.1 | CA Franchise Tax Board | 206.46 | 17 | | | 206.46 |
| 3.1 | California DMV | | | 349.00 | | 0.00 |
| 3.1 | CenturyLink | | | 171.59 | | 171.59 |
| 3.1 | City Santa Monica Utilities | | | 970.39 | | 970.39 |
| 3.1 | Corporate Service Consultants | | | 1.625.00 | | 1,625.00 |
| 3.1 | Corporate Traveler | | | 1,391.26 | | 1,391.26 |
| 3.1 | Cox Business | | | 229.45 | | 229.45 |
| 3.1 | Custom Wood Extras | | | 7,133.75 | | 7,133.75 |
| 3.1 | DC Environmental | | | 110.06 | | 110.06 |
| 3.1 | DeLage Landen Financial Services | | | 162.29 | | 162.29 |

[1] This schedule is for disclosure and informational purposes only.  The Debtor reserves the right to object to allowance of any of the Claims including those identified herein on any grounds under the Bankruptcy Code and applicable non-bankruptcy law. Claims listed at 0.00 indicate the Debtor's understanding and belief that such Claim(s) have been paid in full or were scheduled as disputed or contingent and for which no Claim was timely Filed by the Claimant.

EXHIBIT 2 - PAGE 1

| ALLOWED CONVENIENCE CLAIMS | | | | | |
|---|---|---|---|---|---|
| | | Filed Claims | | Scheduled Claims | | Projected[1] |
| Class | Name | Claim Amount | Claim Number | Amount | D/C/U* | Maximum Allowed Claim Amount |
| 3.1 | FedEx Corporate Services | 1,573.49 | 12 | | | 0.00 |
| 3.1 | Fish Window Cleaning | | | 24.00 | | 24.00 |
| 3.1 | Frontier Communications | | | 2,301.88 | | 2,301.88 |
| 3.1 | Golden State Water Company | | | 288.44 | | 0.00 |
| 3.1 | Kaiser Permanente Southern | | | 5,086.67 | | 0.00 |
| 3.1 | LA Dept. Water & Power | | | 382.00 | | 382.00 |
| 3.1 | LAZ Parking | | | 250.00 | | 250.00 |
| 3.1 | NorthPark Center Merchants Assn | | | 378.80 | | 378.80 |
| 3.1 | Office Depot | | | 261.97 | | 261.97 |
| 3.1 | Pacific Gas & Electric Company | | | 646.92 | | 646.92 |
| 3.1 | Pixeldust Collective | | | 0.00 | D | 0.00 |
| 3.1 | Puget Sound Energy | 348.06 | 14 | 189.40 | | 348.06 |
| 3.1 | Recology Golden Gate Waste | | | 323.25 | | 0.00 |
| 3.1 | San Diego Gas & Electric | | | 785.26 | D | 785.26 |
| 3.1 | San Francisco Water Power & Sewer | | | 22.33 | | 22.33 |
| 3.1 | Southern California Edison | | | 5,614.14 | | 5,614.14 |
| 3.1 | Southern California Gas | | | 17.86 | | 17.86 |
| 3.1 | SP Plus | | | 440.00 | | 440.00 |
| 3.1 | Sparkletts | | | 14.97 | | 14.97 |
| 3.1 | Stingray Business | | | 1,200.00 | | 1,200.00 |
| 3.1 | Stratus Building Solutions | | | 510.00 | | 510.00 |

EXHIBIT 2 - PAGE 2

| ALLOWED CONVENIENCE CLAIMS | | | | | | |
|---|---|---|---|---|---|---|
| | | Filed Claims | | Scheduled Claims | | Projected[1] |
| Class | Name | Claim Amount | Claim Number | Amount | D/C/U* | Maximum Allowed Claim Amount |
| 3.1 | Time Warner Cable Spectrum Business | | | 4,206.12 | | 4,206.12 |
| 3.1 | Travelers Insurance | | | 1,776.00 | | 1,776.00 |
| 3.1 | Uline | 1,342.88 | 4 | 3,040.14 | D | 0.00 |
| 3.1 | Union St Property Trust 1 | | | 9,812.50 | C, D | 0.00 |
| 3.1 | Unexpired Gift Cards | | | 526,614.28 | | 509,235.85[2] |
| 3.1 | Valley Fire | | | 119.00 | | 119.00 |
| 3.1 | Waste Resources Gardena | | | 503.78 | | 0.00 |
| 3.1 | Worksmith | | | 2,726.24 | | 2,726.24 |
| | | | | | | |
| **TOTAL AMOUNT FOR CLASS** | | | | | | **$554,869.29** |

\* Disputed/Contingent/Unliquidated Claim

---

[2] Represents the approximate aggregate amount of unexpired customer gift cards as of 12/15/21. The Bankruptcy Court approved (<u>see</u>, Bankruptcy Court order entered September 23, 2021, Docket No. 46) honoring all gift cards in the ordinary course of business.  For the avoidance of any doubt, to the extent such gift card holders are considered holders of Convenience Claims, all such Claims will be honored and therefore receive value (not Cash) of 100 cents on the dollar and available to be used to purchase merchandise sold by the Debtor.

EXHIBIT 2 - PAGE 3

EXHIBIT 3

## EXHIBIT 3– ALLOWED GENERAL UNSECURED CLAIMS

| ALLOWED GENERAL UNSECURED CLAIMS | | | | | |
|---|---|---|---|---|---|
| | | Filed Claims | | Scheduled Claims | | Projected[1] |
| Class | Name | Claim Amount | Claim Number | Amount | D/C/U* | Maximum Allowed Claim Amount |
| 3.2 | 213 Manhattan Beach Blvd. Partners | 320,662.88 | 13 | 343,069.28 | C, D | 320,662.88 |
| 3.2 | Avalara Inc. | | | 10,730.25 | | 0.00 |
| 3.2 | Bella Terra Associates | 233,244.96 | 15 | 3,234.52 | C, D | 233,244.96 |
| 3.2 | Bellevue Square Merchants Assn. | 11,599.17 | 31 | 7,177.27 | C, D | 11,599.17 |
| 3.2 | Bellevue Square | 449,037.43 | 30 | 747,424.97 | C, D | 449,037.43 |
| 3.2 | Berkshire Hathaway | | | 15,653.80 | | 0.00 |
| 3.2 | Biltmore Shopping Center Partners | 374,642.93 | 27 | 33,067.88 | C, D | 374,642.93 |
| 3.2 | Carlsbad Premium Outlets | 52,419.35 | 6 | 72,500.00 | C, D | 52,419.35 |
| 3.2 | Camarillo Premium Outlets | | | 0.00 | | 0.00 |
| 3.2 | Century City Mall | 586,259.37 | 21 | 241,747.70 | C, D | 586,259.37 |
| 3.2 | City Creek Center | 274,797.42 | 3 | 0.00 | D | 274,797.42 |
| 3.2 | DSC America | | | 548,611.20 | C, D | 548,611.20 |
| 3.2 | El Paseo Premier Center | 84,869.06 | 10 | 2,689.88 | C, D | 84,869.06 |
| 3.2 | Irvine Spectrum Center | 199,344.09 | 19 | 17,210.41 | C, D | 199,344.09 |
| 3.2 | The Irvine Company | 281,623.33 | 18 | 24,590.86 | C, D | 281,623.33 |
| 3.2 | Kierland Greenway | 210,783.09 | 29 | 0.00 | D | 210,783.09 |

[1] This schedule is for disclosure and informational purposes only. The Debtor reserves the right to object to allowance of any of the Claims including those identified herein on any grounds under the Bankruptcy Code and applicable non-bankruptcy law. Claims listed at 0.00 indicate the Debtor's understanding and belief that such Claim(s) have been paid in full or were scheduled as disputed or contingent and for which no Claim was timely Filed by the Claimant.

EXHIBIT 3 - PAGE 1

| | | Filed Claims | | Scheduled Claims | | Projected[1] |
|---|---|---|---|---|---|---|
| **ALLOWED GENERAL UNSECURED CLAIMS** | | | | | | |
| Class | Name | Claim Amount | Claim Number | Amount | D/C/U* | Maximum Allowed Claim Amount |
| 3.2 | Macerich SMP (Santa Monica) | 927,714.49 | 28 | 230,059.37 | C, D | 927,714.49 |
| 3.2 | Mission Viejo Associates aka Shops at Mission Viejo | 365,579.91 | 9 | 177,053.60 | C, D | 365,579.91 |
| 3.2 | NorthPark Partners aka NorthPark Center | 141,302.92 | 32 | 7,246.06 | C, D | 141,302.92 |
| 3.2 | Palm Desert | | | 0.00 | | 0.00 |
| 3.2 | Premium Outlet Partners | 367,523.64 | 8 | 159,547.51 | C, D | 367,523.64 |
| 3.2 | Rakuten Marketing | | | 16,000.00 | | 16,000.00 |
| 3.2 | Santa Anita Fashion Park | 223,331.22 | 23 | 83,529.78 | C, D | 223,331.22 |
| 3.2 | Sherman Oaks Fashion Assn. | 419,908.09 | 22 | 189,426.47 | C, D | 419,908.09 |
| 3.2 | The Retail Property Trust | 338,690.10 | 7 | 162,210.93 | C, D | 338,690.10 |
| 3.2 | US Bank N.A. PPP Loan | 1,192,456.93 | 20 | 1,188,265.00 | | 1,192,456.93[2] |
| 3.2 | UTC Venture | 391,889.95 | 24 | 149,373.09 | C, D | 391,889.95 |
| 3.2 | Valencia Town Center Venture | 212,859.16 | 25 | 69,899.54 | D | 212,859.16 |
| 3.2 | Westcor SanTan Village | 169,561.83 | 26 | 0.00 | D | 169,561.83 |
| | | | | | | |
| **TOTAL AMOUNT FOR CLASS** | | | | | | **$8,394,712.52** |

\* Disputed/Contingent/Unliquidated Claim

---

[2] Total includes $4,191.93 accrued interest.

EXHIBIT 3 - PAGE 2

EXHIBIT 4

## EXHIBIT 4 – ALLOWED SUBORDINATED CLAIMS

| ALLOWED SUBORDINATED CLAIMS | | | | | |
|---|---|---|---|---|---|
| Class | Name | Filed Claims | | Scheduled Claims | | Projected[1] Maximum Allowed Claim Amount |
| | | Claim Amount | Claim Number | Amount | D/C/U* | |
| 3.3 | Lorna Jane USA Holdings, Inc | | | 32,292,117.00 | | 32,292,116.60 |
| 3.3 | Lorna Jane B.V. | | | 181.00 | | 195.68 |
| 3.3 | Lorna Jane Hong Kong Ltd. | | | 3,583.00 | | 3,582.96 |
| 3.3 | Lorna Jane Pty Ltd | | | 9,852,744.00 | | 9,878,692.78 |
| 3.3 | Move Nourish Believe Pte Ltd | | | 1,319,617.00 | | 1,343,081.84 |
| 3.3 | Run Girl Run (Shenzhen) Co Ltd | | | 72,232.00 | | 72,232.27 |
| | | | | | | |
| **TOTAL AMOUNT FOR CLASS** | | | | | | **$43,589,902.13** |

\* Disputed/Contingent/Unliquidated Claim

---

[1] This schedule is for disclosure and informational purposes only. The Debtor reserves the right to object to allowance of any of the claims including those identified herein on any grounds under the Bankruptcy Code and applicable non-bankruptcy law.

EXHIBIT 4 - PAGE 1

EXHIBIT 5

**Loma Jane USA, Inc.**                    **DIP Case No: 2:21-bk-17267-NB**

**Estimated Liquidation Analysis**

| Loma Jane USA, Inc. DIP Estimated Liquidation Analysis | Notes | Estimate Bal Effective Date 4/1/2022 | Recovery % | Liquidation Value |
|---|---|---|---|---|
| **Assets:** | | | | |
| Cash | 1 | 1,501,618 | 100.0% | 1,501,618 |
| Accounts Receivable | 2 | 100,000 | 40.0% | 40,000 |
| Inventory | 3 | 1,600,000 | 20.0% | 320,000 |
| Intercompany Receivables | 4 | 518,236 | 100.0% | 518,236 |
| Other Deposits | 5 | 83,173 | 0.0% | 0 |
| Prepayments | 6 | 200,000 | 15.0% | 30,000 |
| Deposits | 7 | 30,296 | 0.0% | 0 |
| Fixed Assets Net | 8 | 275,913 | 5.0% | 13,796 |
| IP Net | 9 | 24,898 | 10.9% | 2,715 |
| **Gross Proceeds Available for Distribution** | | **4,334,134** | | **2,426,364** |
| **Less: Chapter 7 Administrative Claims** | | | | |
| Estimated Chapter 7 Trustee Fees | | | 100.0% | (98,250) |
| Trustees Professional Fees | | | 100.0% | (150,000) |
| **Subtotal** | | | | (248,250) |
| **Net Proceeds Available for Distribution** | | | | **2,178,114** |
| **Less: Chapter 11 Subchapter V Administrative Claims** | | | | |
| Post Petition Vendor Claims | 10 | | 100.0% | (931,261) |
| Unpaid Ch 11 Professional Fees | | | 100.0% | (150,000) |
| | | | | (1,081,261) |
| **Net Proceeds Available for Creditor Claims** | | | | **1,096,853** |
| **Less: Secured Claims** | | | | |
| Secured Tax Claims | | | 100.0% | (2,168) |
| **Less: Unsecured Claims** | | | | |
| Unclassified Tax Claims | | 13,919.97 | 100.0% | (13,920) |
| **Total Available for General Unsecured Creditors** | | | | **1,080,765** |
| **General Unsecured Claims** | 11 | 52,539,483 | | |
| **% Recovery to General Unsecured Claims** | | | 2.1% | |

EXHIBIT 5 - PAGE 1

*Notes & Significant Assumptions to Liquidation Analysis*

1   Cash consists of the estimated cash balance in the Debtor's DIP bank account on the estimated Effective Date.

2   Accounts receivable consists of balances owed by Debtor wholesale accounts.  In the event of a liquidation of the Debtor's business, these are not expected to be collected 100%.

3   Inventory is proprietary branded apparel supplied under license agreement by International.  There is no open market for this apparel, and the only souce of recovery is to sell back to
    International at a heavy discount, which includes obsolescence.

4   Intercompany receivables net are stated at estimated value at Effective Date and due from other global subsidiaries of International.

5   Other deposits are stated at estimated value at Effective Date and the probability of collection is unknown.

6   Prepayments are mostly insurance  and only expected to be partially recoverable.

7   Deposits consist of the rent and security deposit paid on the Debtor's Distribution Center and is expected to be held by the landlord in a liquidation scenario.

8   Fixed assets are stated at estimated value at Effective Date, and are mostly warehouse racking and equipment, office furniture and computers, and as such, realization on liquidation is expected to be minimal.

9   IP net is a web domain (not the Debtor's web domain which is owned by International) owned by the Debtor and valued by GoDaddy.com at the stated value.

10  Post-petition administrative claims are stated at estimated value at Effective Date owed to vendor accounts payable, accrued expenses and payroll, and sales tax payable.

11  Comprised of all Holders of General Unsecured Claims including those classified in the Plan as Convenience Claims (including gift card holders), General Unsecured Claims, and Subordinated Claims

EXHIBIT 5 - PAGE 2

EXHIBIT 6

**EXHIBIT 6**

**Lorna Jane USA, Inc. DIP Case No: 2:21-bk-17267-NB**

**Financial Projections 3 Years 2022 - 2025**

**Notes to Financial Projections**

1. Bankruptcy Code Section 1191 (d) (2) says that in subchapter V, a debtor's "disposable income" is "the income that is received by the debtor and that is not reasonably necessary to be expended" for the following specific purposes; payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. For the purposes of these Financial Projections, the debtor has determined that it needs to maintain a cash reserve of $1,000,000 (the "Reserve Amount") during the period of the Financial Projections, for payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. Accordingly, the debtor has calculated from its Financial Projections that its disposable income in excess of the Reserve Amount, and available to pay general creditors, is $2,115,000 over three (3) years from the Plan Effective Date.

2. A reconciliation of Disposable Income from the Financial Projections is below.

| | 9 Months Apr - Dec 2022 | 2023 | 2024 | 2025 Jan - Jul Final Pmt | Plan 3 Year Period |
|---|---|---|---|---|---|
| Estimated Opening Cash Balance | 1,501,618 | 1,333,409 | 970,761 | 873,227 | 1,501,618 |
| Estimated Cash Balance Movement | (168,209) | (362,648) | (97,534) | 126,543 | (501,848) |
| Estimated Closing Cash Balance | 1,333,409 | 970,761 | 873,227 | 999,770 | 999,770 |
| Reserve Amount of Cash | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| Estimated Available Cash | 333,409 | (29,239) | (126,773) | (230) | (230) |
| Estimated Payments to Creditors | 232,829 | 684,426 | 684,426 | 513,320 | 2,115,000 |
| Cumulative payments to Creditors | 232,829 | 917,255 | 1,601,681 | 2,115,000 | 2,115,000 |
| Disposable Income | 566,237 | 655,187 | 557,653 | 513,089 | 2,114,770 |

EXHIBIT 6 - PAGE 1

**Lorna Jane USA, Inc.**

**Projected Income Statement 2022 - 2025**

| Lorna Jane USA, Inc. | 2022 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Income Statement Projection | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
| **Net Revenue** | | | | | | | | | | |
| Sales to Customers | 359,180 | 412,135 | 412,007 | 320,048 | 488,789 | 470,264 | 290,435 | 447,410 | 428,198 | 4,707,649 |
| **Total Net Revenue** | 359,180 | 412,135 | 412,007 | 320,048 | 488,789 | 470,264 | 290,435 | 447,410 | 428,198 | 4,707,649 |
| **Cost of Sales** | | | | | | | | | | |
| Goods Purchased for Resale | 120,405 | 138,254 | 138,587 | 111,816 | 174,438 | 163,640 | 101,838 | 160,617 | 149,450 | 1,619,001 |
| **Total Cost of Sales** | 120,405 | 138,254 | 138,587 | 111,816 | 174,438 | 163,640 | 101,838 | 160,617 | 149,450 | 1,619,001 |
| % of Net Sales | 33.5% | 33.5% | 33.6% | 34.9% | 35.7% | 34.8% | 35.1% | 35.9% | 34.9% | 34.4% |
| **Gross Profit** | 238,776 | 273,880 | 273,420 | 208,232 | 314,350 | 306,624 | 188,597 | 286,793 | 278,748 | 3,088,648 |
| % of Net Sales | 66.5% | 66.5% | 66.4% | 65.1% | 64.3% | 65.2% | 64.9% | 64.1% | 65.1% | 65.6% |
| **SG&A Expense** | | | | | | | | | | |
| Auto | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 1,400 |
| Bank Fees | 3,427 | 2,228 | 2,440 | 2,074 | 2,326 | 2,707 | 2,033 | 2,497 | 2,720 | 29,740 |
| Depreciation | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Employee Benefits | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 45,600 |
| Insurance | 10,233 | 10,233 | 10,233 | 10,233 | 10,233 | 10,233 | 10,233 | 10,233 | 10,233 | 122,800 |
| Marketing & Promotional | 69,336 | 79,427 | 78,901 | 60,010 | 86,758 | 111,316 | 67,459 | 97,690 | 100,612 | 962,245 |
| Merchant Fees | 8,980 | 10,303 | 10,300 | 8,001 | 12,220 | 11,757 | 7,261 | 11,185 | 10,705 | 117,691 |
| Office Expenses | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Other Expenses | 29,400 | 19,400 | 19,400 | 29,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 253,195 |
| Payroll & Payroll Taxes | 52,101 | 55,720 | 55,720 | 52,101 | 52,101 | 52,101 | 52,101 | 55,720 | 55,720 | 639,693 |
| Professional Fees | 123,333 | 3,333 | 16,458 | 8,333 | 3,333 | 18,333 | 9,167 | 9,167 | 22,292 | 334,918 |
| Rent & Property Expenses | 21,886 | 14,052 | 22,652 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 21,886 | 192,892 |
| Shipping & Delivery | 19,755 | 22,667 | 22,660 | 17,603 | 26,883 | 25,865 | 15,974 | 24,608 | 23,551 | 258,921 |
| Utilities | 2,833 | 2,833 | 2,833 | 2,833 | 2,833 | 2,833 | 2,833 | 2,833 | 2,833 | 34,000 |
| **Total SG&A Expenses** | 348,701 | 227,615 | 249,015 | 212,057 | 237,557 | 276,014 | 207,930 | 254,802 | 277,370 | 3,035,095 |
| % of Net Sales | 97.1% | 55.2% | 60.4% | 66.3% | 48.6% | 58.7% | 71.6% | 57.0% | 64.8% | 64.5% |
| **Net Income Before Tax** | (109,925) | 46,266 | 24,405 | (3,825) | 76,793 | 30,610 | (19,333) | 31,991 | 1,379 | 53,553 |
| % of Net Revenue | -30.6% | 11.2% | 5.9% | -1.2% | 15.7% | 6.5% | -6.7% | 7.2% | 0.3% | 1.1% |
| Income Tax Expense | | | | | | | | | | 0 |
| **Net Income (Loss) After Tax** | (109,925) | 46,266 | 24,405 | (3,825) | 76,793 | 30,610 | (19,333) | 31,991 | 1,379 | 53,553 |
| % of Net Revenue | -30.6% | 11.2% | 5.9% | -1.2% | 15.7% | 6.5% | -6.7% | 7.2% | 0.3% | 1.1% |

EXHIBIT 6 - PAGE 2

**Lorna Jane USA, Inc.**

**Projected Income Statement 2022 - 2025**

| Lorna Jane USA, Inc. Income Statement Projection | 2023 | | | | | 2024 | | | | | 2025 | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Q1 | Q2 | Q3 | Q4 | Total | Q1 | Q2 | Q3 | Q4 | Total | Q1 | Q2 | Q3 | Total | |
| **Net Revenue** | | | | | | | | | | | | | | | |
| Sales to Customers | 1,267,160 | 1,421,304 | 1,454,175 | 1,325,170 | 5,467,810 | 1,393,876 | 1,563,435 | 1,599,593 | 1,457,687 | 6,014,591 | 1,533,264 | 1,719,778 | 1,759,552 | 5,012,594 | 5,012,594 |
| **Total Net Revenue** | 1,267,160 | 1,421,304 | 1,454,175 | 1,325,170 | 5,467,810 | 1,393,876 | 1,563,435 | 1,599,593 | 1,457,687 | 6,014,591 | 1,533,264 | 1,719,778 | 1,759,552 | 5,012,594 | 5,012,594 |
| **Cost of Sales** | | | | | | | | | | | | | | | |
| Goods Purchased for Resale | 442,309 | 503,494 | 510,920 | 467,553 | 1,924,275 | 486,540 | 553,843 | 562,012 | 514,308 | 2,116,703 | 535,194 | 609,227 | 618,213 | 1,762,634 | 1,762,634 |
| **Total Cost of Sales** | 442,309 | 503,494 | 510,920 | 467,553 | 1,924,275 | 486,540 | 553,843 | 562,012 | 514,308 | 2,116,703 | 535,194 | 609,227 | 618,213 | 1,762,634 | 1,762,634 |
| % of Net Sales | 34.9% | 35.4% | 35.1% | 35.3% | 35.2% | 34.9% | 35.1% | 35.1% | 35.3% | 35.2% | 34.9% | 35.4% | 35.1% | 35.2% | 35.2% |
| **Gross Profit** | 824,851 | 917,811 | 943,256 | 857,617 | 3,543,535 | 907,336 | 1,009,592 | 1,037,581 | 943,379 | 3,897,888 | 998,069 | 1,110,551 | 1,141,339 | 3,249,960 | 3,249,960 |
| % of Net Sales | 65.1% | 64.6% | 64.9% | 64.7% | 64.8% | 65.1% | 64.6% | 64.9% | 64.7% | 64.8% | 65.1% | 64.6% | 64.9% | 64.8% | 64.8% |
| **SG&A Expense** | | | | | | | | | | | | | | | |
| Auto | 361 | 361 | 361 | 361 | 1,442 | 371 | 371 | 371 | 371 | 1,485 | 382 | 382 | 382 | 1,147 | 1,147 |
| Bank Fees | 6,999 | 7,435 | 7,459 | 7,200 | 29,092 | 7,781 | 8,256 | 8,292 | 8,000 | 32,329 | 8,634 | 9,139 | 9,187 | 26,961 | 26,961 |
| Depreciation | 7,500 | 7,500 | 7,500 | 7,500 | 30,000 | 7,500 | 7,500 | 7,500 | 7,500 | 30,000 | 7,500 | 7,500 | 7,500 | 22,500 | 22,500 |
| Employee Benefits | 11,742 | 11,742 | 11,742 | 11,742 | 46,968 | 12,094 | 12,094 | 12,094 | 12,094 | 48,377 | 12,457 | 12,457 | 12,457 | 37,371 | 37,371 |
| Insurance | 31,621 | 31,621 | 31,621 | 31,621 | 126,484 | 32,570 | 32,570 | 32,570 | 32,570 | 130,279 | 33,547 | 33,547 | 33,547 | 100,640 | 100,640 |
| Marketing & Promotional | 238,132 | 257,261 | 268,835 | 242,374 | 1,006,602 | 261,945 | 282,987 | 295,719 | 266,611 | 1,107,262 | 288,140 | 311,286 | 325,290 | 924,716 | 924,716 |
| Merchant Fees | 31,679 | 35,533 | 36,354 | 33,129 | 136,695 | 34,847 | 39,086 | 39,990 | 36,442 | 150,365 | 38,332 | 42,994 | 43,989 | 125,315 | 125,315 |
| Office Expenses | 3,090 | 3,090 | 3,090 | 3,090 | 12,360 | 3,183 | 3,183 | 3,183 | 3,183 | 12,731 | 3,278 | 3,278 | 3,278 | 9,835 | 9,835 |
| Other Expenses | 22,720 | 22,720 | 22,720 | 19,400 | 87,560 | 22,720 | 22,720 | 22,720 | 19,400 | 87,560 | 22,720 | 22,720 | 22,720 | 68,160 | 68,160 |
| Payroll & Payroll Taxes | 195,650 | 195,650 | 195,650 | 206,833 | 793,784 | 237,217 | 237,217 | 237,217 | 248,735 | 960,385 | 281,101 | 281,101 | 281,101 | 843,302 | 843,302 |
| Professional Fees | 45,925 | 40,925 | 45,925 | 40,925 | 173,700 | 46,234 | 41,234 | 46,234 | 41,234 | 174,936 | 46,552 | 41,552 | 46,552 | 134,657 | 134,657 |
| Rent & Property Expenses | 40,855 | 57,983 | 41,221 | 49,212 | 189,271 | 41,626 | 59,534 | 42,436 | 50,587 | 194,182 | 43,687 | 61,126 | 43,687 | 148,500 | 148,500 |
| Shipping & Delivery | 69,694 | 78,172 | 79,980 | 72,884 | 300,730 | 76,663 | 85,989 | 87,978 | 80,173 | 330,803 | 84,329 | 94,588 | 96,775 | 275,693 | 275,693 |
| Utilities | 8,755 | 8,755 | 8,755 | 8,755 | 35,020 | 9,018 | 9,018 | 9,018 | 9,018 | 36,071 | 9,288 | 9,288 | 9,288 | 27,865 | 27,865 |
| **Total SG&A Expenses** | 714,722 | 758,747 | 761,213 | 735,026 | 2,969,708 | 793,769 | 841,758 | 845,320 | 815,918 | 3,296,764 | 879,947 | 930,959 | 935,754 | 2,746,660 | 2,746,660 |
| % of Net Sales | 56.4% | 53.4% | 52.3% | 55.5% | 54.3% | 56.9% | 53.8% | 52.8% | 56.0% | 54.8% | 57.4% | 54.1% | 53.2% | 54.8% | 54.8% |
| **Net Income Before Tax** | 110,128 | 159,064 | 182,043 | 122,592 | 573,826 | 113,567 | 167,834 | 192,262 | 127,461 | 601,124 | 118,122 | 179,592 | 205,586 | 503,299 | 503,299 |
| % of Net Revenue | 8.7% | 11.2% | 12.5% | 9.3% | 10.5% | 8.1% | 10.7% | 12.0% | 8.7% | 10.0% | 7.7% | 10.4% | 11.7% | 10.0% | 10.0% |
| Income Tax Expense | | | | | 0 | | | | | 0 | | | | 0 | 0 |
| **Net Income (Loss) After Tax** | 110,128 | 159,064 | 182,043 | 122,592 | 573,826 | 113,567 | 167,834 | 192,262 | 127,461 | 601,124 | 118,122 | 179,592 | 205,586 | 503,299 | 503,299 |
| % of Net Revenue | 8.7% | 11.2% | 12.5% | 9.3% | 10.5% | 8.1% | 10.7% | 12.0% | 8.7% | 10.0% | 7.7% | 10.4% | 11.7% | 10.0% | 10.0% |

EXHIBIT 6 - PAGE 3

**Lorna Jane USA, Inc.**

**Projected Balance Sheet 2022 - 2025**

| Lorna Jane USA, Inc. | 2022 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Balance Sheet Projection** | **Apr** | **May** | **Jun** | **Jul** | **Aug** | **Sep** | **Oct** | **Nov** | **Dec** |
| **Current Assets** | | | | | | | | | |
| Cash | 1,388,522 | 1,373,878 | 1,397,401 | 1,082,017 | 1,253,168 | 1,336,981 | 1,161,313 | 1,289,058 | 1,333,409 |
| Accounts Receivable | 102,500 | 105,000 | 107,500 | 110,000 | 145,000 | 115,000 | 110,600 | 146,650 | 115,750 |
| Inventory | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 |
| Intercompany Receivables | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 |
| Other Deposits | 80,557 | 60,914 | 88,764 | 83,272 | 65,929 | 85,722 | 83,549 | 77,765 | 84,723 |
| Prepayments | 228,104 | 214,052 | 200,000 | 228,104 | 214,052 | 200,000 | 228,104 | 214,052 | 200,000 |
| **Total Current Assets** | **3,917,919** | **3,872,079** | **3,911,901** | **3,621,629** | **3,796,384** | **3,855,939** | **3,701,802** | **3,845,761** | **3,852,117** |
| **Current Liabilities** | | | | | | | | | |
| Accounts Payable | 376,412 | 277,265 | 290,191 | 241,345 | 324,996 | 352,737 | 228,021 | 325,665 | 329,488 |
| Accrued Expenses | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 |
| Accrued Payroll | 32,023 | 32,859 | 32,859 | 32,023 | 32,023 | 32,023 | 32,023 | 32,859 | 32,859 |
| Accrued Sales Tax | 25,143 | 28,849 | 28,841 | 22,403 | 34,215 | 32,918 | 20,330 | 31,319 | 29,974 |
| Intercompany Payables | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 |
| **Total Current Liabilities** | **44,543,480** | **44,448,876** | **44,461,792** | **44,405,674** | **44,501,137** | **44,527,581** | **44,390,277** | **44,499,744** | **44,502,223** |
| **Working Capital** | **(40,625,562)** | **(40,576,796)** | **(40,549,892)** | **(40,784,046)** | **(40,704,752)** | **(40,671,642)** | **(40,688,475)** | **(40,653,984)** | **(40,650,105)** |
| *Plus:* | | | | | | | | | |
| **Deposits** | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 |
| **Fixed Assets Net** | 273,413 | 270,913 | 268,413 | 265,913 | 263,413 | 260,913 | 258,413 | 255,913 | 253,413 |
| **IP Net** | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 |
| *Less:* | | | | | | | | | |
| **Secured Claims** | 2,168 | 2,168 | 2,168 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Unsecured Claims** | 2,053,278 | 2,053,278 | 2,053,278 | 1,882,172 | 1,882,172 | 1,882,172 | 1,882,172 | 1,882,172 | 1,882,172 |
| **Convenience & Unclass Tax Claims** | 59,553 | 59,553 | 59,553 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Net Assets** | **(42,411,955)** | **(42,365,689)** | **(42,341,285)** | **(42,345,110)** | **(42,268,317)** | **(42,237,706)** | **(42,257,039)** | **(42,225,048)** | **(42,223,669)** |
| **Represented By:** | | | | | | | | | |
| **Stockholders Equity** | | | | | | | | | |
| Shareholder Capital | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Retained Earnings C/F | (42,278,223) | (42,278,223) | (42,278,223) | (42,278,223) | (42,278,223) | (42,278,223) | (42,278,223) | (42,278,223) | (42,278,223) |
| Current Year Net Income | (134,732) | (88,466) | (64,062) | (67,887) | 8,906 | 39,516 | 20,184 | 52,175 | 53,553 |
| **Total Stockholders Equity** | **(42,411,955)** | **(42,365,689)** | **(42,341,285)** | **(42,345,110)** | **(42,268,317)** | **(42,237,706)** | **(42,257,039)** | **(42,225,048)** | **(42,223,669)** |

EXHIBIT 6 - PAGE 4

**Lorna Jane USA, Inc.**

**Projected Balance Sheet 2022 - 2025**

| Lorna Jane USA, Inc. | 2023 Q1 | 2023 Q2 | 2023 Q3 | 2023 Q4 | 2024 Q1 | 2024 Q2 | 2024 Q3 | 2024 Q4 | 2025 Q1 | 2025 Q2 | 2025 Q3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Balance Sheet Projection** | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | |
| Cash | 864,779 | 1,042,999 | 905,211 | 970,761 | 743,969 | 933,209 | 807,961 | 873,227 | 651,461 | 854,933 | 916,669 |
| Accounts Receivable | 115,500 | 135,000 | 126,667 | 127,767 | 118,050 | 139,500 | 130,333 | 131,543 | 120,855 | 144,450 | 134,367 |
| Inventory | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 |
| Intercompany Receivables | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 | 518,236 |
| Other Deposits | 272,851 | 263,221 | 256,042 | 278,919 | 299,470 | 288,960 | 281,063 | 306,145 | 328,751 | 317,273 | 308,587 |
| Prepayments | 206,000 | 206,000 | 206,000 | 206,000 | 212,180 | 212,180 | 212,180 | 212,180 | 218,545 | 218,545 | 218,545 |
| **Total Current Assets** | 3,577,365 | 3,765,456 | 3,612,155 | 3,701,683 | 3,491,904 | 3,692,085 | 3,549,773 | 3,641,331 | 3,437,847 | 3,653,437 | 3,696,404 |
| **Current Liabilities** | | | | | | | | | | | |
| Accounts Payable | 287,536 | 315,466 | 324,069 | 295,654 | 313,081 | 343,971 | 353,268 | 322,289 | 341,144 | 375,289 | 385,349 |
| Accrued Expenses | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 | 520,000 |
| Accrued Payroll | 35,050 | 35,050 | 35,050 | 35,910 | 38,247 | 38,247 | 38,247 | 39,133 | 41,623 | 41,623 | 41,623 |
| Accrued Sales Tax | 29,567 | 33,164 | 33,931 | 30,921 | 32,524 | 36,480 | 37,324 | 34,013 | 35,776 | 40,128 | 41,056 |
| Intercompany Payables | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 | 43,589,902 |
| **Total Current Liabilities** | 44,462,055 | 44,493,582 | 44,502,951 | 44,472,387 | 44,493,755 | 44,528,601 | 44,538,741 | 44,505,338 | 44,528,445 | 44,566,943 | 44,577,930 |
| **Working Capital** | (40,884,690) | (40,728,126) | (40,890,796) | (40,770,705) | (41,001,851) | (40,836,516) | (40,988,968) | (40,864,007) | (41,090,598) | (40,913,506) | (40,881,527) |
| *Plus:* | | | | | | | | | | | |
| Deposits | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 | 30,296 |
| Fixed Assets Net | 255,913 | 258,413 | 260,913 | 263,413 | 265,913 | 268,413 | 270,913 | 273,413 | 275,913 | 278,413 | 280,913 |
| IP Net | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 | 24,898 |
| *Less:* | | | | | | | | | | | |
| Secured Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Unsecured Claims | 1,539,959 | 1,539,959 | 1,197,746 | 1,197,746 | 855,533 | 855,533 | 513,320 | 513,320 | 171,107 | 171,107 | 0 |
| Convenience & Unclass Tax Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Net Assets** | (42,113,541) | (41,954,477) | (41,772,435) | (41,649,843) | (41,536,276) | (41,368,442) | (41,176,180) | (41,048,719) | (40,930,597) | (40,751,005) | (40,545,420) |
| **Represented By:** | | | | | | | | | | | |
| **Stockholders Equity** | | | | | | | | | | | |
| Shareholder Capital | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Retained Earnings C/F | (42,224,669) | (42,224,669) | (42,224,669) | (42,224,669) | (41,650,843) | (41,650,843) | (41,650,843) | (41,650,843) | (41,049,719) | (41,049,719) | (41,049,719) |
| Current Year Net Income | 110,128 | 269,192 | 451,235 | 573,826 | 113,567 | 281,401 | 473,663 | 601,124 | 118,122 | 297,714 | 503,299 |
| **Total Stockholders Equity** | (42,113,541) | (41,954,477) | (41,772,435) | (41,649,843) | (41,536,276) | (41,368,442) | (41,176,180) | (41,048,719) | (40,930,597) | (40,751,005) | (40,545,420) |

EXHIBIT 6 - PAGE 5

Lorna Jane USA, Inc.

Projected Statement of Cash Flows 2022 - 2025

| Lorna Jane USA, Inc. | 2022 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Cashflow Statement Projection | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
| **Cashflows From Operations** | | | | | | | | | |
| **Net Income After Tax** | (109,925) | 46,266 | 24,405 | (3,825) | 76,793 | 30,610 | (19,333) | 31,991 | 1,379 |
| **Adjustments to Reconcile Net Income to Net Cash From Operations** | | | | | | | | | |
| Depreciation Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| **Changes in Operating Assets & Liabilities** | | | | | | | | | |
| Accounts Receivable | (2,500) | (2,500) | (2,500) | (2,500) | (35,000) | 30,000 | 4,400 | (36,050) | 30,900 |
| Inventory | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Intercompany Receivables | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Deposits | 2,616 | 19,643 | (27,850) | 5,491 | 17,344 | (19,793) | 2,173 | 5,784 | (6,958) |
| Prepayments | (28,104) | 14,052 | 14,052 | (28,104) | 14,052 | 14,052 | (28,104) | 14,052 | 14,052 |
| Accounts Payable | 28,683 | (99,147) | 12,926 | (48,846) | 83,650 | 27,741 | (124,716) | 97,644 | 3,823 |
| Accrued Expenses | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Accrued Payroll | 0 | 835 | 0 | (835) | 0 | 0 | 0 | 835 | 0 |
| Accrued Sales Tax | (6,365) | 3,707 | (9) | (6,437) | 11,812 | (1,297) | (12,588) | 10,988 | (1,345) |
| **Net Cash Provided by Operations** | (113,096) | (14,644) | 23,523 | (82,556) | 171,151 | 83,813 | (175,668) | 127,744 | 44,351 |
| **Cashflows From Investing Activities** | | | | | | | | | |
| Deposits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Fixed Assets Net | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| IP Net | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **Net Cash Used in Investing Activities** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Cashflows From Financing Activities** | | | | | | | | | |
| Intercompany Payables | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Secured Claims | 0 | 0 | 0 | (2,168) | 0 | 0 | 0 | 0 | 0 |
| Unsecured Claims | 0 | 0 | 0 | (171,107) | 0 | 0 | 0 | 0 | 0 |
| Convenience & Unclass Tax Claims | 0 | 0 | 0 | (59,553) | 0 | 0 | 0 | 0 | 0 |
| **Net Cash From Financing Activities** | 0 | 0 | 0 | (232,829) | 0 | 0 | 0 | 0 | 0 |
| **Increase (Decrease) in Cash** | (113,096) | (14,644) | 23,523 | (315,384) | 171,151 | 83,813 | (175,668) | 127,744 | 44,351 |
| **Opening Cash Balance** | 1,501,618 | 1,388,522 | 1,373,878 | 1,397,401 | 1,082,017 | 1,253,168 | 1,336,981 | 1,161,313 | 1,289,058 |
| **Closing Cash Balance** | 1,388,522 | 1,373,878 | 1,397,401 | 1,082,017 | 1,253,168 | 1,336,981 | 1,161,313 | 1,289,058 | 1,333,409 |

EXHIBIT 6 - PAGE 6

**Lorna Jane USA, Inc.**

**Projected Statement of Cash Flows 2022 - 2025**

| Lorna Jane USA, Inc. | 2023 | | | | 2024 | | | | 2025 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cashflow Statement Projection | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 |
| Cashflows From Operations | | | | | | | | | | | |
| Net Income After Tax | 110,128 | 159,064 | 182,043 | 122,592 | 113,567 | 167,834 | 192,262 | 127,461 | 118,122 | 179,592 | 205,586 |
| Adjustments to Reconcile Net Income to Net Cash From Operations | | | | | | | | | | | |
| Depreciation Expense | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Changes in Operating Assets & Liabilities | | | | | | | | | | | |
| Accounts Receivable | 250 | (19,500) | 8,333 | (1,100) | 9,717 | (21,450) | 9,167 | (1,210) | 10,688 | (23,595) | 10,083 |
| Inventory | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Intercompany Receivables | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Deposits | (188,128) | 9,629 | 7,179 | (22,877) | (20,550) | 10,509 | 7,897 | (25,082) | (22,605) | 11,477 | 8,687 |
| Prepayments | (6,000) | 0 | 0 | 0 | (6,180) | 0 | 0 | 0 | (6,365) | 0 | 0 |
| Accounts Payable | (41,952) | 27,930 | 8,603 | (28,414) | 17,427 | 30,890 | 9,296 | (30,978) | 18,855 | 34,146 | 10,059 |
| Accrued Expenses | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Accrued Payroll | 2,191 | 0 | 0 | 860 | 2,337 | 0 | 0 | 886 | 2,490 | 0 | 0 |
| Accrued Sales Tax | (407) | 3,597 | 767 | (3,010) | 1,603 | 3,956 | 844 | (3,311) | 1,763 | 4,352 | 928 |
| Net Cash Provided by Operations | (116,417) | 188,220 | 214,425 | 75,550 | 125,421 | 199,240 | 226,965 | 75,266 | 130,447 | 213,472 | 242,843 |
| Cashflows From Investing Activities | | | | | | | | | | | |
| Deposits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fixed Assets Net | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| IP Net | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Cash Used in Investing Activities | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| Cashflows From Financing Activities | | | | | | | | | | | |
| Intercompany Payables | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Secured Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Unsecured Claims | (342,213) | 0 | (342,213) | 0 | (342,213) | 0 | (342,213) | 0 | (342,213) | 0 | (171,107) |
| Convenience & Unclass Tax Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Cash From Financing Activities | (342,213) | 0 | (342,213) | 0 | (342,213) | 0 | (342,213) | 0 | (342,213) | 0 | (171,107) |
| Increase (Decrease) in Cash | (468,630) | 178,220 | (137,788) | 65,550 | (226,792) | 189,240 | (125,248) | 65,266 | (221,766) | 203,472 | 61,736 |
| Opening Cash Balance | 1,333,409 | 864,779 | 1,042,999 | 905,211 | 970,761 | 743,969 | 933,209 | 807,961 | 873,227 | 651,461 | 854,933 |
| Closing Cash Balance | 864,779 | 1,042,999 | 905,211 | 970,761 | 743,969 | 933,209 | 807,961 | 873,227 | 651,461 | 854,933 | 916,669 |

EXHIBIT 6 - PAGE 7

**EXHIBIT 7 – EXECUTORY CONTRACTS TO BE ASSUMED**

1. Sublease Agreement for Distribution Center
2. IP Licence Agreement

EXHIBIT 7 - PAGE 1

## EXHIBIT 8 – EXECUTORY CONTRACTS TO BE REJECTED

1. DeLage Photocopier Lease

EXHIBIT 8 - PAGE 1

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 15, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **J. Bennett Friedman**    jfriedman@flg-law.com, msobkowiak@flg-law.com;jmartinez@flg-law.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;mweinberg@wghlawyers.com
- **Brian D Huben**    hubenb@ballardspahr.com, carolod@ballardspahr.com;rev_jarushewskyj@ballardspahr.com
- **Dare Law**    dare.law@usdoj.gov
- **George C Lazar**    glazar@foxjohns.com
- **Brian M Muchinsky**    bmuchinsky@noldmuchlaw.com
- **Ernie Zachary Park**    ernie.park@bewleylaw.com
- **Susan K Seflin (TR)**    sseflin@bg.law, sks@bg.law;mailto:aquijano@bg.law;C192@ecfcbis.com;ecf@bg.law
- **Ronald M Tucker**    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Dan Woods**    d.woods@musickpeeler.com, p.salazar@musickpeeler.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **December 15, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

**RSN [56]**
Plano Independent School District
c/o Linda D. Reece
Perdue Brandon Fielder Collins & Mott LLP
1919 S. Shiloh Rd., Suite 640, LB 40
Garland, TX 75042

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 15, 2021 | Jeannie Martinez | *Jeannie Martinez* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |